J-S01024-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
JOSEPH SENTORE COLEMAN, JR. :
:
Appellant : No. 672 MDA 2020

Appeal from the Judgment of Sentence Entered November 20, 2019
In the Court of Common Pleas of Lycoming County Criminal Division at
No(s): CP-41-CR-0000090-2017

BEFORE: LAZARUS, J., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY McCAFFERY, J.: **FILED: JULY 7, 2021**

Joseph Sentore Coleman, Jr. (Appellant) appeals from the judgment of sentence imposed November 20, 2019, in the Lycoming County Court of Common Pleas. Appellant was sentenced to two consecutive terms of life imprisonment, following his jury conviction of two counts of second-degree murder and related offenses for the October 2016 shooting deaths of Shane Wright and Kristine Kibler, and his bench conviction of persons not to possess firearms.[1] On appeal, Appellant argues the trial court erred when it permitted the Commonwealth to amend the criminal information, denied his request for

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2502(b), 6105(c)(2). The firearms offense was severed from the jury trial.

a **Franks**[2] hearing, denied his motion for a change of venue, instructed the jury on an offense not charged, and denied his motion for a new trial based on the Commonwealth's failure to disclose an interview. In addition, Appellant challenges the weight and sufficiency of the evidence supporting his conviction of persons not to possess firearms, and asserts the charge was based on a confession admitted in violation of the *corpus delicti* rule. For the reasons below, we affirm.

The facts underlying Appellant's convictions are summarized by the trial court as follows:

> This case arose from the shooting deaths of Shane Wright and Kristine Kibler on October 31, 2016, at 613 Poplar Street in Williamsport, PA.
>
> By way of background, [Appellant] called Casey Wilson and directed Wilson to pick him up on Scott Street. Appellant then directed Wilson to Race Street where they picked up Jordan Rawls. Wilson drove Appellant and Rawls to 613 Poplar Street so that Appellant and Rawls could rob Shane Wright, whom Appellant believed was selling marijuana.
>
> Wilson drove to the area of Wright's residence and parked on Trenton Avenue. Appellant directed Wilson, a friend of Wright's, to go inside Wright's residence and determine whether Wright and the other occupants were downstairs and to make sure the back door was unlocked. Wilson went into the residence for about ten minutes before returning to the vehicle and informing

---

[2] **See Franks v. Delaware**, 438 U.S. 154, 155-56 (1978) (Fourth Amendment requires a hearing at defendant's request when defendant "makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and . . . the allegedly false statement is necessary to the finding of probable cause").

Appellant and Rawls of the whereabouts of the persons inside the residence.

Appellant and Rawls, each wearing a mask and armed with a firearm, exited the vehicle and entered the residence. While Appellant was on the first floor robbing or attempting to rob Wright, Rawls was at or near the top of the stairs to the second floor.

Kibler's daughter, Cheyanna Wright, and her boyfriend heard Kibler come out of her second floor bedroom and scream. They opened the door of their room and observed a light-skinned, masked gunman (Rawls) holding Kibler at gunpoint. Rawls pointed his firearm at them and they retreated into their bedroom. Shortly thereafter, they heard two gunshots.

Appellant and Rawls ran back to Wilson's vehicle, which was parked on Trenton Avenue. Once both were inside the vehicle, Appellant directed Wilson to drive away.

When Cheyanna Wright and her boyfriend exited their bedroom, they found Kibler in the hallway dying from a gunshot wound and Shane Wright's body in the front doorway. They called 9-1-1.

Trial Ct. Op., 8/14/20, 1-2.

Following an investigation, on November 1, 2016, Appellant was charged with two counts of criminal homicide, two counts of criminal conspiracy (murder and robbery), criminal attempt (robbery), robbery, persons not to possess firearms, firearms not to be carried without a license, and possession of an instrument of crime (PIC).[3] On May 3, 2017, Appellant filed an omnibus pretrial motion seeking, *inter alia*, severance of the firearms offenses, a change of venue, and suppression of his arrest warrant due to the

_____

[3] 18 Pa.C.S. §§ 2501, 903(a)(1), 901(a), 3701(a)(1)(iii), 6105(c)(2), 6106(a)(1), and 907(b), respectively. The Commonwealth later withdrew the PIC charge. **See** Order, 9/3/19.

affiant's intentional omission of relevant information in the warrant, *i.e.*, a *Franks* motion. **See** Appellant's Omnibus Pre-Trial Motion, 5/3/17, at 2-3, 10-11. A month later, Appellant filed an amended *Franks* motion.

On June 22, 2017, the court entered an order resolving most of the claims in Appellant's pretrial motion — in particular, granting Appellant's motion to sever the firearms offenses and denying Appellant's motion for change of venue "without prejudice to reinstate during jury selection." **See** Order, 6/22/17, at 1. The court conducted a hearing on Appellant's *Franks* motion on August 31, 2017. On November 13th, the trial court entered an order and opinion, finding Appellant did not meet "the *Franks* standard to require [a] further hearing" and denying his motion to suppress. Order, 11/13/17.

Thereafter, on July 30, 2018, the Commonwealth filed a motion to amend the information, proposing to add "to wit" clauses to both firearms counts. **See** Commonwealth's Motion to Amend Information, 7/30/18, at 1 (unpaginated). The Commonwealth explained that it did not intend to prove Appellant possessed a handgun during the "home invasion robbery;" rather it intended to prove he possessed a "Ruger .22 semi-automatic handgun" in a motor vehicle – a fact he admitted in a videotaped interview with police. **Id.** at 1-2. On September 11, 2018, the court granted the Commonwealth's motion to amend. **See** Order, 9/11/18.

On November 14, 2018, after a jury was chosen, the trial court declared a mistrial, finding "irreconcilable differences between [Appellant] and his court

appointed counsel and . . . substantial reasons for appointing new counsel." Order, 11/30/18.[4]  The court later appointed Robert Hoffa, Esquire, to represent Appellant.  *Id.*

The case proceeded to a jury trial before Senior Judge J. Michael Williamson, specially presiding.  On February 15, 2019, the jury found Appellant guilty of two counts of second degree murder, and one count each of attempted robbery, conspiracy to commit robbery, and robbery.[5]  Following the verdict, Attorney Hoffa was permitted to withdraw, and present counsel, Jeana Longo, Esquire, was appointed to represent Appellant.

After his February 2019, jury conviction, Appellant was charged with an unrelated homicide that had occurred on August 30, 2016 ("the Park Avenue shooting").[6]  On July 8, 2019, Appellant moved for a change of venue for the firearms trial based on the "pervasive" media coverage surrounding his murder convictions and new charges.  **See** Appellant's Motion for a Change of Venue or Venire, 7/8/19, at 3 (unpaginated).  Meanwhile, Appellant filed a motion for a new trial with respect to the homicide convictions, claiming he

---

[4] Although the order was entered November 14th, it was not docketed until November 30th.

[5] The jury found Appellant not guilty of the lesser offense of third degree murder.

[6] On February 13, 2020, Appellant was convicted of first-degree murder and related offenses for the Park Avenue shooting.  His judgment of sentence was affirmed by this same panel on April 23, 2021.  **See Commonwealth v. Coleman**, 710 MDA 2020 (unpub. memo.) (Pa. Super. Apr. 23, 2021).

received discovery in relation to the Park Avenue shooting — namely, two interviews with Ronald Shoop, Jr. — which were "wrongfully withheld from him by the Commonwealth[,]" and relevant to the present homicide. **See** Appellant's Motion for a New Trial, 7/31/19, at 2-3 (unpaginated).

On September 3, 2019, Appellant waived his right to a jury trial, and proceeded to a bench trial on the firearms charges before the Honorable Marc F. Lovecchio. The court found him guilty of persons not to possess a firearm, but acquitted him of the charge of possession of a firearm without a license. On September 6th, Appellant filed a post-verdict motion challenging his firearms conviction as against the weight of the evidence, and improperly based on a confession admitted in violation of the *corpus delecti* rule. On October 17, 2019, the trial court denied Appellant's challenge to the weight of the evidence, and deferred ruling on the *corpus delecti* issue until Appellant raised the claim in a post-sentence motion. Meanwhile, on October 25, 2019, President Judge Nancy L. Butts denied Appellant's motion for a new trial in the homicide case based on alleged suppressed interviews.

On November 20, 2019, Judge Lovecchio sentenced Appellant to an aggregate term of two life sentences on all the offenses. Appellant filed a timely post-sentence on November 26th, challenging both the sufficiency and weight of the evidence supporting his firearm conviction, and seeking reconsideration of the court's decision to impose the life sentences consecutively. The court denied Appellant's motion on April 7, 2020. This

timely appeal follows.[7]  Appellant subsequently complied with the court's directive to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Appellant raises the following eight claims on appeal:[8]

[1]  Whether the trial court erred in permitting the [C]ommonwealth to amend the criminal information to specify that the gun [Appellant] possessed was different than the type of gun that he was originally charged with possessing.

[2] Whether Appellant was deprived of his constitutional right to a **Franks** hearing . . . after he made a substantial showing to the court that the affidavit of probable cause for his arrest warrant contained intentional, knowing, or recklessly omitted information that provided the basis for probable cause.

[3]  Whether the trial court erred in denying his motion for change of venue or venire and by precluding him from having a venue hearing which deprived him of a fair and impartial trial.

---

[7] Generally, a trial court must rule upon a post-sentence motion within 120 days or it is deemed denied by operation of law.  **See** Pa.R.Crim.P. 720(B)(3)(a).  However, when a post-sentence motion is denied by operation of law, the clerk of courts must enter an order on the docket and serve the order to the parties.  Pa.R.Crim.P. 720(B)(3)(c).  The defendant then has 30 days to file a notice of appeal.  Pa.R.Crim.P. 720(A)(2)(b).

Here, the 120-day period for consideration of Appellant's post-sentence expired on March 25, 2020.  However, the clerk of courts did not enter an order denying the motion by operation of law.  Rather, on April 7, 2020, the trial court denied the motion on the merits, and Appellant appealed within 30 days.  "[W]here the clerk of courts does not enter an order indicating that the post-sentence motion is denied by operation of law and notify the defendant of same, a breakdown in the court system has occurred and we will not find an appeal untimely under these circumstances."  **Commonwealth v. Perry**, 820 A.2d 734, 735 (Pa. Super. 2003).

[8] We have reordered Appellant's issues for ease of disposition.

[4] Whether the trial court erred in instructing the jury on a Burglary charge when [Appellant] was not charged with a Burglary.

[5] Whether the trial court erred in denying his motion for a new trial after the [C]ommonwealth failed to disclose evidence of a recorded witness interview until after trial which deprived [Appellant] of the opportunity to investigate the claims made by the witness.

[6] Whether the verdict of guilt with respect to the [firearms] charge was based on insufficient evidence because the Commonwealth failed to establish beyond a reasonable doubt that he possessed the gun that . . was used pursuant to the factual scenario established at his preliminary hearing.

[7] Whether the verdict of guilt with respect to the [firearms] charge was [i]mproperly [b]ased on a confession that was admitted in violation of the *Corpus Del[i]cti Rule*.

[8] Whether the verdict of guilty with respect to the [firearms] offense was against the weight of the evidence because the evidence established that the gun that was recovered was different than the gun that was used during the . . . crime.

Appellant's Brief at 8-9.

In his first issue, Appellant argues the trial court erred when it permitted the Commonwealth to amend the criminal information on September 11, 2018, with regard to the firearms offense.[9] Appellant's Brief at 19. He insists "the amendment charged [him] with a different offense" and "exposed [him] to a different factual scenario that was not fully developed at the preliminary hearing." *Id.* at 19, 22. Appellant contends the persons not to possess crime charged in the original criminal information was based on Wilson's preliminary

---

[9] Although Appellant was charged with two firearms offenses, he was only convicted of violating Section 6105 (persons not to possess). Thus, we will refer to only one firearms offense.

hearing testimony that Appellant carried a gun into Wright's residence when he and Rawls entered the home intending to rob Wright. ***See id.*** at 21-22. However, Appellant argues that, after he admitted in a November 2016 police interview that he sold a .22 Ruger to Wright sometime earlier on October 31st, the Commonwealth sought to amend the information to include **that** factual scenario, one that was not developed during the preliminary hearing. ***Id.*** at 21. He also maintains that "the gun that [he] sold to Shane Wright was chrome and the gun that was presented at trial was gray[;]" thus, the gun used in the home invasion was "arguably different than the gun" sold to Wright. ***Id.*** at 22.

At the time Appellant was charged, Pennsylvania Rule of Criminal Procedure 564 provided:

> The court may allow an information to be amended when there is a defect in form, the description of the offense(s), the description of any person or any property, or the date charged, provided the information as amended does not charge an additional or different offense. Upon amendment, the court may grant such postponement of trial or other relief as is necessary in the interests of justice.

Pa.R.Crim.P. 564 (2001).[10] This Court has explained: "[T]he purpose of Rule 564 is to ensure that a defendant is fully apprised of the charges, and to avoid

---

[10] Rule 564 was amended in 2016, with an effective date of December 21, 2017. Because Appellant was originally charged before the amendment, we look to the prior language of the rule. Nevertheless, the Comment to amended Rule 564 clarifies that "[t]he rule was amended . . . to more accurately reflect the interpretation of this rule that has developed since it first was adopted in 1974." Pa.R.Crim.P. 564, Comment. Thus, under either version, our review is the same.

prejudice by prohibiting the last minute addition of alleged criminal acts of which the defendant is uninformed." ***Commonwealth v. Sinclair***, 897 A.2d 1218, 1221 (Pa. Super. 2006).

When reviewing the grant of motion to amend an information:

> [T]his Court will look to whether the appellant was fully apprised of the factual scenario which supports the charges against him. Where the crimes specified in the original information involved the same basi[c] elements and arose out of the same factual situation as the crime added by the amendment, the appellant is deemed to have been placed on notice regarding his alleged criminal conduct and no prejudice to defendant results.

Further, the factors which the trial court must consider in determining whether an amendment is prejudicial are:

> (1) whether the amendment changes the factual scenario supporting the charges; (2) whether the amendment adds new facts previously unknown to the defendant; (3) whether the entire factual scenario was developed during a preliminary hearing; (4) whether the description of the charges changed with the amendment; (5) whether a change in defense strategy was necessitated by the amendment; and (6) whether the timing of the Commonwealth's request for amendment allowed for ample notice and preparation.

***Commonwealth v. Mentzer***, 18 A.3d 1200, 1202–03 (Pa. Super. 2011) (citations omitted).

In the present case, the November 1, 2016, **criminal complaint** accused Appellant of the crime of persons not to possess a firearm for "possess[ing] a semi-auto handgun during a home invasion robbery that resulted in the death of two people." Police Criminal Complaint, 11/1/16, at 3. However, the original **criminal information**, filed on February 3, 2017,

- 10 -

did not include any description of the gun Appellant allegedly possessed or the circumstances of his illegal possession. Rather, it simply specified the prior felony which prohibited Appellant's possession of a firearm was a drug offense. *See* Commonwealth's Criminal Information, 2/3/17, at 2.

After his arrest, Appellant was interviewed by Agent Trent Peacock of the Williamsport Bureau of Police. *See* N.T., 9/3/19, at 50. During the interview, Agent Peacock showed Appellant a photo of a gun the police recovered based on information from Wilson. *See id.* Appellant initialed the photo and indicated it was the gun he sold to Wright on October 31, 2016.[11] *Id.* The Commonwealth later sought to amend the criminal information to add the following language:

> TO WIT: [Appellant] did possess a Ruger .22 semi-automatic handgun. [Appellant] was prohibited from possessing the firearm based on a 1998 conviction for possession with intent to deliver a controlled substance (F), and a 2011 conviction for delivery of a controlled substance (F).

Commonwealth's Motion to Amend Information at 1. Furthermore, the Commonwealth averred: "At trial for the gun charges, the Commonwealth will not be attempting to prove that [Appellant] possessed the handgun during a home invasion robbery that resulted in the death of two people, but will simply prove that the handgun in question was in [Appellant's] possession and

_____

[11] Although the interview was videorecorded, and played during Appellant's nonjury trial on the firearms charge, it is not included in the certified record. Nonetheless, Appellant does not dispute that during the interview, he told Agent Peacock "he sold a chrome gun and marijuana to Wright on October 31, 2016[.]" *See* N.T., 9/3/19, at 65-66; Appellant's Brief at 14.

- 11 -

that [Appellant] rode in a motor vehicle while the gun was in his possession on [October 31st]." *Id.* at 1-2.

In granting the motion to amend, the trial court opined:

When viewing the factors, the amendment does not change the factual scenario or add facts previously unknown to [Appellant]. The proposed amended information is evidence from the Affidavit of Probable Cause, the testimony at the preliminary hearing, and information [Appellant] was aware he had given during police questioning. Specifying the caliber and model does not change the factual scenario. This scenario was established during the preliminary hearing. There is no change to the charges or the elements Commonwealth needs to prove. Additionally[,] there is no allegation by [Appellant] this will change his strategy or that the timing has hindered his defense.

Trial Ct. Op. 9/11/18, at 3.

We agree. First, we note that although Appellant insists "the amendment exposed [him] to a different factual scenario that was not fully developed at the preliminary hearing," the transcript from the preliminary hearing is not included in the certified record. *See* Appellant's Brief at 22. "Our law is unequivocal that the responsibility rests upon the appellant to ensure that the record certified on appeal is complete in the sense that it contains all of the materials necessary for the reviewing court to perform its duty." *Commonwealth v. Holston*, 211 A.3d 1264, 1276 (Pa. Super. 2019) (*en banc*). For this reason, we could conclude Appellant's argument is waived.

Nevertheless, we note the Commonwealth attached several pages of Wilson's testimony during the January 17, 2017, preliminary hearing to its brief filed in support of the motion to amend. *See* Commonwealth's Brief in

Support of Motion to Amend the Information, 9/5/18, Exhibit A, N.T., 1/17/17. At the hearing, Wilson testified that he saw Appellant with a "German Ruger" as Appellant "walked away from [his] car toward Shane Wright's house[.]" *Id.* at 10-11, 19. Although in his statement, Appellant told police he possessed the firearm under different circumstances — *i.e.*, selling it to Wright, as opposed to using it during the home invasion — the Commonwealth's proposed amendment did not change the factual scenario supporting the charge. The Commonwealth charged Appellant with **possessing** a firearm, not **selling** a firearm.[12] Thus, Appellant's first claim warrants no relief.

Second, Appellant argues the trial court erroneously deprived him of a *Franks* hearing after he "made a substantial preliminary showing that [the] affidavit of probable cause [for his arrest warrant] was supported by false statements that were made knowingly and intentionally, or with reckless disregard for the truth." Appellant's Brief at 23. Specifically, Appellant insists the affiant omitted the fact that Cheyanna Wright, an eyewitness to the home invasion and daughter of one of the victims, "described the shooter to police as 'light skinned' . . . and that she had a gut feeling that Casey Wilson was

---

[12] We note, too, that at the conclusion of the nonjury trial, the trial court found Wilson's testimony that Appellant had a gun **before** the home invasion credible. **See** N.T., 9/3/19, at 84-85. The court further found Appellant "admitted to the police officers [and] on the stand that he possessed a loaded .22 caliber automatic handgun on his hip, or tucked in his waistband[.]" **Id.** at 85.

her mother's shooter." *Id.* (citation omitted). Appellant further avers the trial court agreed this was a "material omission," but ultimately denied his request for a hearing. *Id.* at 24. He maintains the police "deliberately withheld the fact that an eyewitness described an individual other than [Appellant] as the shooter in the home invasion." *Id.* at 25.

In *Franks*, the United States Supreme Court held:

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

*Franks*, 438 U.S. at 155–56. *Franks* addressed a claim of false information included in a probable cause affidavit. Here, Appellant alleges the Commonwealth **omitted** relevant information from the affidavit. Under those circumstances, this Court has explained:

> Where a defendant alleges that material facts were omitted from an affidavit, we consider "(1) whether the officer withheld a highly relevant fact within his knowledge, where any reasonable person would have known that this was the kind of thing the judge would wish to know" and "(2) whether the affidavit would have provided probable cause if it had contained a disclosure of the omitted information."

*Commonwealth v. Gould*, 187 A.3d 927, 940 (Pa. Super. 2018) (citation omitted).

In the present case, Appellant filed a motion for a **Franks** hearing, asserting several "material" facts he claimed the affiant "intentional[ly]" omitted from the probable cause affidavit, including the fact that "a witness inside the residence told the police that she believed that Wilson was the person who shot her mother." **See** Appellant's Amended Count VIII Omnibus Pre-trial Motion **Franks**/Reverse **Franks** Motion, 6/8/17, at 3-4. On August 31, 2017, the court conducted argument on the motion, and later denied Appellant's request for a further hearing. **See** Order, 11/13/17.

The trial court opined:

[T]he Court finds that [Cheyanna's statement, that the shooter was a light skinned individual whom she believed was Wilson,] was a material omission that the issuing authority would have liked to have known prior to issuing an arrest warrant. [Despite that] omission, the affidavit would still have provided probable cause even if the statement had been included. Casey Wilson himself was intimately involved in the incident that evening. He admits to that. Other witnesses put his vehicle in the area at the time of the shooting, which he admits he was. Witnesses saw two people return to . . . Wilson's vehicle. . . . Wilson told police who those individuals were. Wilson's statements are sufficient to establish probable cause that [Appellant] participated in the commission of those crimes.

\* \* \*

. . . Though Wilson's motives may be unclear, his admissions are against his penal interest and therefore have the indicia of reliability[.] Wilson was intimately involved in the events of the evening and made statements with specific detail that corroborated other witnesses['] statements."

- 15 -

Trial Ct. Op., 11/13/17, at 7-9 (citation omitted). We agree.

Cheyanna did **not** positively identify Wilson as the masked gunman. Rather, during her police interview following the shooting, "she told police that she had a **gut feeling** Casey Wilson was her mother's shooter" because the shooter was "light skinned." Trial Ct. Op., 11/13/17, at 5 (emphasis added).[13] She explained:

> The light skin part is what gets me. So you could see on the ski mask had the eyes cut out and the lips. And it was that light color. That's what I keep thinkin' of because Casey is a lighter color.

*Id.* We agree with the trial court that, even if this information was included, the affidavit would have still provided probable cause to support Appellant's arrest. *See Gould*, 187 A.3d at 940. As the trial court explained, in his statement implicating Appellant in the home invasion, Wilson also implicated himself. *See* Trial Ct. Op., 11/13/17, at 8-9. Cheyanna's "gut feeling" that the masked shooter was Wilson does not undermine Wilson's testimony that Appellant was also involved in the crime. Thus, no relief is warranted.

Next, Appellant contends the trial court erred when it denied his motion for a change of venue or venire prior to his firearms trial. Appellant emphasizes that six days after his February 2019 conviction for the October 31, 2016, Wright home invasion, he was charged with the unrelated Park Avenue shooting. Appellant's Brief at 50-51. He insists the "pretrial publicity

---

[13] Although Cheyenna's police statement is not in the certified record, the trial court cited the relevant parts of the statement in its opinion.

surrounding him, the case and the nature of his charges had been so pervasive, negative, inflammatory, and so inculpatory that a change of venue and/or venire [was] the only means for [him] to impanel an impartial jury[.]" *Id.* at 52-53. Appellant maintains "the internet was saturated with . . . articles and . . . news clips regarding [him], the charges in his case, and his recent conviction of an unrelated homicide[,]" and referred to him as a "'convicted murder' who is 'locked up[.]'" *Id.* at 53 (footnote omitted). Appellant summarizes:

> [A]s a black defendant in a low population area [sic], saturated with prejudicial media coverage which was heightened a week after he was convicted of an unrelated homicide, he would be unable to select a fair and impartial jury in Lycoming County by the time this case proceeds to trial.

*Id.* at 54. Further, Appellant complains he was "unable to present evidence" to support his motion because the court refused to hold a venue hearing. *See id.* at 54-56. Thus, he claims, he had no choice but to waive his right to a jury and proceed with a non-jury trial. *Id.* at 55.

"[A] trial court's decision to deny [a motion to change venue] will not be overturned by this Court on appeal, unless the record evidences that the trial court has abused its discretion in making its ruling." *Commonwealth v. Briggs*, 12 A.3d 291, 313 (Pa. 2011).

Pursuant to Pennsylvania Rule of Criminal Procedure 584, "[v]enue or venire may be changed by [a] court when it is determined after hearing that a fair and impartial trial cannot otherwise be had in the county where the case is currently pending." Pa.R.Crim.P. 584(A). "As a general rule, for a

defendant to be entitled to a change of venue because of pretrial publicity, he or she must show that the publicity caused actual prejudice by preventing the empaneling of an impartial jury." ***Briggs***, 12 A.3d at 313.

> Nevertheless, our Court has recognized that there are some instances in which pretrial publicity can be so pervasive and inflammatory a defendant does not have to prove actual prejudice. Prejudice will be presumed whenever a defendant demonstrates that the pretrial publicity:  "(1) was sensational, inflammatory, and slanted toward conviction, rather than factual and objective; (2) revealed the defendant's prior criminal record, if any, or referred to confessions, admissions or reenactments of the crime by the defendant; or (3) derived from official police or prosecutorial reports."  However, if the defendant proves the existence of one or more of these circumstances, a change of venue will still not be compelled unless the defendant also demonstrates that the presumptively prejudicial pretrial publicity "was so extensive, sustained, and pervasive that the community must be deemed to have been saturated with it, and that there was insufficient time between the publicity and the trial for any prejudice to have dissipated."

***Id.*** at 314.  Thus, it is evident the burden is on the defendant to demonstrate the necessity of a change of venue.

In the present case, the record contains no evidence supporting Appellant's claim of pervasive, prejudicial, pretrial publicity because there was no venue hearing.  However, as the trial court explained:  "Appellant's assertion that the trial court **precluded** him from having a venue hearing is simply not accurate."  Trial Ct. Op., 8/14/20, at 11 (emphasis added).  A review of the relevant procedural history is instructive.

Appellant sought a change of venue prior to both the murder trial and the firearms trial.  ***See*** Appellant's Omnibus Pretrial Motion, 5/3/17, at 8-9;

- 18 -

Appellant's Motion for a Change of Venue or Venire, 7/8/19. Before the murder trial, the court denied Appellant's request for a change of venue "without prejudice to reinstate during jury selection." Order, 6/22/17. The record does not reveal whether Appellant argued for a change of venue during *voir dire* for the murder charge.

With regard to the motion filed in July of 2019, the trial court summarized the relevant procedural history as follows:

> That motion was originally scheduled for a hearing on October 21, 2019. Appellant's case, however, was on the August 13, 2019 call of the list and the September trial term. Appellant filed an application for continuance seeking to continue the case from the call of the list and the trial term. The prosecutor opposed the continuance request and stated, "The motion can be heard and decided prior to [Appellant's] September trial date. This case has dragged on for too long." The court denied the motion and indicated it would decide the venue objection during jury selection.
>
> Appellant's case was called for jury selection on August 14, 2019[.] Appellant's counsel requested reconsideration of the continuance request. She indicated that she had witnesses for the October 21 hearing date who were not available at the time of jury selection. She indicated that the witnesses would testify with respect [to] the coverage of this case on social media.
>
> \* \* \*
>
> [The trial court] denied Appellant's request for reconsideration. [The court] noted that many people do not read the newspaper or watch the news anymore. [The court] did not recall seeing anything about Appellant on social media. Furthermore, the best evidence regarding the pervasiveness of any pretrial publicity would come from the jurors indicating whether they had seen or heard anything.

Trial Ct. Op., 8/14/20, at 9-10 (record citations and footnote omitted). Thereafter, Appellant waived his right to a jury trial. Prior to his nonjury trial on September 3, 2019, Appellant renewed his "objection to having a Lycoming County judge preside over [his] bench trial[.]" N.T., 9/3/19, at 2. The court, once again, denied the motion for a change of venue, and proceeded to trial. *See id.* at 10-11.

Thus, the trial court did not deny Appellant a venue hearing, but rather, denied his request for a continuance of trial to conduct a venue hearing. While Appellant argued the scheduling prevented him from presenting witnesses concerning the pretrial publicity, at no time did Appellant present **any** evidence concerning his claim. Further, as the Supreme Court explained in *Briggs*:

> Although it is conceivable that pretrial publicity could be so extremely damaging that a court might order a change of venue no matter what the prospective jurors said about their ability to hear the case fairly and without bias, that would be a most unusual case. Normally, what prospective jurors tell us about their ability to be impartial will be a reliable guide to whether the publicity is still so fresh in their minds that it has removed their ability to be objective.

*Briggs*, 12 A.3d at 314 (citation omitted). Here, before the trial court could question prospective jurors, Appellant waived his right to a jury trial. Accordingly, we conclude Appellant failed to establish his right to relief on this claim.

In his next issue, Appellant argues the trial court erred when it instructed the jury on the crime of burglary when he was not charged with

burglary. Appellant's Brief at 31. He asserts the court's instruction "misled the jury[,]" and that "any evidence related to a burglary would not be relevant at trial" because it would constitute a prior bad act. *Id.* at 32-33.

> When we consider a challenge to a trial court's jury instructions,
>
> our [standard] of review is to determine whether the trial court committed a clear abuse of discretion or an error of law controlling the outcome of the case. A charge will be found adequate unless the issues are not made clear, the jury was misled by the instructions, or there was an omission from the charge amounting to a fundamental error.

*Commonwealth v. Bradley*, 232 A.3d 747, 759 (Pa. Super. 2020) (citations and punctuation omitted).

Here, the trial court instructed the jury on the elements of burglary, an offense with which Appellant was not charged. In its opinion, the court explained that the instruction was required because burglary was one of the underlying felonies to support Appellant's charge of second-degree murder. *See* Trial Ct. Op., 8/14/20, at 5-6. We note, however, that at trial, the court instructed the jury on the elements of burglary with respect to both the offenses of second-degree murder **and** robbery.

Appellant was charged with robbery under subsection 3701(a)(1)(iii), which provides "[a] person is guilty of robbery if, in the course of committing a theft, he . . . commits or threatens immediately to commit **any felony** of the first or second degree[.]" 18 Pa.C.S. § 3701(a)(1)(iii) (emphasis added). The Commonwealth proposed, and the court charged, that burglary was the underlying "first or second degree" Appellant committed in the course of

- 21 -

committing a theft for purposes of his robbery charge, as well as the possible underlying felony supporting a conviction of second-degree murder.[14] **See** N.T., 2/15/19, at 2-4, 18-19, 28-29.

It is well-established that "[w]here a murder is alleged to have been committed in the perpetration of a felony, there is no requirement that the defendant actually be charged with the underlying felony." ***Commonwealth v. Giles***, 456 A.2d 1356, 1359 (Pa. 1983). ***Accord Commonwealth v. Passmore***, 857 A.2d 697, 706 (Pa. Super. 2004). Furthermore, the Supreme Court has opined: "For a verdict to be founded on felony-murder, the felony allegedly involved must be identified and described by more than merely its name; there must be an understandable delineation of the elements of the offense." ***Commonwealth v. Shadron***, 370 A.2d 697, 701 (Pa. 1977) (vacating judgment of sentence for felony murder when trial court failed to instruct jury on elements of either felony underlying the charge).

Appellant's argument on appeal does not address, let alone refute, the trial court's reasoning. In the present case, we agree with the trial court that it was "**required** to instruct the jury regarding the elements of the underlying felonies[.]" **See** Trial Ct. Op., 8/14/20, at 6. The Commonwealth alleged

---

[14] "A criminal homicide constitutes murder of the second degree when it is committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony." 18 Pa.C.S. § 2502(b). **See also** 18 Pa.C.S. § 2502(d) (defining "[p]erpetration of a felony" as "[t]he act of . . . engaging in or being an accomplice in the commission of, or an attempt to commit, [*inter alia*,] robbery [or] burglary").

both that Appellant committed burglary, a first degree felony, during the course of committing a theft, and that Rawls killed the victim "while he and [Appellant] were partners in committing or attempting a robbery **or** burglary[.]" N.T., 2/15/19, at 2, 18-19, 29 (emphasis added). Thus, Appellant is entitled to no relief.

In his fifth claim, Appellant insists the trial court erred when it denied his motion for a new trial "because the Commonwealth failed to disclose material evidence to the defense until after trial" — specifically, two recorded interviews with witness Ronald Shoop. Appellant's Brief at 26-27. Although he acknowledges the interviews were inculpatory, Appellant maintains the Commonwealth's nondisclosure of the interviews "deprived [him] of a fair trial because he was unable to investigate Shoop's statements and to question the police regarding the interviews at trial." *Id.* at 31.

By way of background, on July 31, 2019, **after** Appellant was convicted of murder in the present case, he filed a motion for a new trial. The motion alleged that defense counsel had received discovery for the Park Avenue shooting, which included the aforementioned interviews with Shoop. Appellant's Motion for a New Trial, 7/31/19, at 2 (unpaginated). During the interviews, which were conducted **before** Appellant's February 2019 murder trial in the present case, the police questioned Shoop about both the Park Avenue shooting and the present home invasion. *See id.* Shoop stated Appellant told him: (1) Appellant and his co-defendant entered the house in the present case to rob the residents of "'weed and money,' and that Casey

Wilson knew the victims[;]" (2) his co-defendant was armed with "a .40" and he had "a .22[;]" (3) "he was already outside when he heard the shots[;]" (4) his co-defendant "shot the victims in [the present case] to prove himself after the Park Ave[nue] homicide[;]" and (4) "the guns were now in the water." Trial Ct. Op., 10/25/19, at 2-3.

At a hearing on Appellant's motion, the Commonwealth "conceded that that information was inadvertently suppressed as it was in possession of police prior to trial." Trial Ct. Op. 10/25/19, at 5. Nevertheless, the trial court denied Appellant's request for a new trial after concluding Appellant failed to demonstrate "the facts put forth in Shoop's two interviews [were] favorable to [Appellant] and the suppression of the interviews prejudiced him at trial." *Id.* at 6.

On appeal, Appellant argues the Commonwealth violated Pa.R.Crim.P. 573 when it failed to turn over the Shoop interviews before trial. Rule 573, in pertinent part, mandates that the Commonwealth disclose to the defendant "[a]ny evidence favorable to the accused that is material either to guilt or to punishment, and is within the possession or control of the attorney for the Commonwealth[.]" Pa.R.Crim.P. 573(B)(1)(a).

> A defendant seeking relief from a discovery violation must demonstrate prejudice. A violation of discovery "does not automatically entitle appellant to a new trial." Rather, an appellant must demonstrate how a more timely disclosure would have affected his trial strategy or how he was otherwise prejudiced by the alleged late disclosure.

- 24 -

*Commonwealth v. Causey*, 833 A.2d 165, 171 (Pa. Super. 2003) (citations omitted).

Here, the trial court found Appellant "failed to demonstrate that the facts put forth in Shoop's two interviews are favorable to [Appellant] and that the suppression of the interviews prejudiced him at trial." Trial Ct. Op., 10/25/19, at 6. The court explained Appellant's alleged statement to Shoop that "the guns used in the homicide were in the water, [was] not exculpatory[, and did] not contradict any element of the crimes for which [Appellant] was convicted, but simply change[d] how the firearm was disposed of." *Id.* at 5. Further, the court emphasized:

> [T]he interviews with Shoop only solidify the Commonwealth's theory of the case and the evidence presented at trial concerning [Appellant's] involvement in the homicide. Both consistently show [Appellant] used a .22 during the incident. Both demonstrate Casey Wilson was the first to go in to the victim's residence to check and that the purpose of the burglary was to take drugs and money from Shane Wright. Lastly, both show that the co-defendant and not [Appellant] pulled the trigger.

*Id.* We agree. Absent any evidence of prejudice, Appellant's request for a new trial based on the Commonwealth's inadvertent suppression of inculpatory evidence fails.

In his next two issues, Appellant challenges the sufficiency of the evidence supporting his firearms conviction. First, he argues "the Commonwealth did not prove beyond a reasonable doubt that [he] possessed a gun consistent with the factual scenario established at the preliminary hearing [or in] the criminal complaint." Appellant's Brief at 42. Second, he

maintains his conviction was "based almost exclusively on his recorded statements . . . admitted in violation of the *Corpus Delecti* Rule." ***Id.*** at 44. Again, we conclude no relief is due.

Our review of a challenge to the sufficiency of the evidence is well-settled:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Hewlett***, 189 A.3d 1004, 1008 (Pa. Super. 2018) (citation omitted).

Pursuant to 18 Pa.C.S. § 6105, a person who has been convicted of certain enumerated felonies is prohibited from possessing, using, controlling, selling, transferring, or manufacturing a firearm in the Commonwealth. 18 Pa.C.S. § 6105(a)(1). During the non-jury trial on the firearms charges, Appellant stipulated that he has a prior conviction of an enumerated felony —

delivery of heroin. *See* N.T., 9/3/19, at 53-54, 69. His claim on appeal focuses on whether the Commonwealth proved he possessed a firearm "**consistent with** the factual scenario established at the preliminary hearing [and in] the criminal complaint." *See* Appellant's Brief at 42 (emphasis added). He asserts the criminal complaint alleged he possessed a "semi-automatic handgun during a home invasion robbery." *Id.* However, he insists the court convicted him of possessing a gun he sold to victim Shane Wright earlier that evening, a fact he admitted in his statement to police. *See id.* at 43. Appellant maintains: "Because the gun that was used to commit the homicide was arguably different than the gun that was sold to Shane Wright, the verdict was based on a different factual scenario [than was] fully developed at the preliminary hearing." *Id.*

Appellant misconstrues the guilty verdict in this case. During the firearms trial, Wilson testified that Appellant possessed a gun in Wilson's car before the home invasion, which he then "carried . . . with him" when he exited the car. N.T., 9/3/19, at 14, 16. Wilson further stated that after they fled the scene of the murders, Appellant gave Wilson "[h]is gun and his face mask [which] he wrapped around the gun, and . . . told [Wilson] to . . . get rid of it." *Id.* at 17. Wilson claimed he later "threw [the gun] behind a bush at Victoria Gardens" on Hepburn Street in Williamsport. *Id.* at 18. Agent Peacock recovered that gun — a Ruger .22 semi-automatic pistol — which was missing the magazine. *Id.* at 47-49. A magazine found at the crime scene

- 27 -

matched the .22 recovered from the bushes at Victoria Gardens. *Id.* at 42-43, 49, 59.

The Commonwealth also introduced Appellant's November 18, 2016, videotaped interview with police. *See* N.T., 9/3/19, at 54. During the interview,[15] Appellant told police he and Wilson sold a "chrome .22" gun to Wright on the day of the murders. *See id.* at 65.

Appellant insists "the [trial] court found [him] guilty of persons not to possess on the basis that [he] admitted to possessing a gun that he sold to Shane Wright [and not] pursuant to the allegations as stated in the criminal complaint that [he] 'did possess a semi-automatic handgun during a home invasion robbery.'" Appellant's Brief at 43. We disagree. When announcing its verdict, the trial court explained that while Wilson's credibility was suspect in some respects, the court was "convinced beyond a reasonable doubt that [Wilson] saw [Appellant] with a gun." N.T., 9/3/19, at 84-85 ("I think his testimony was clear and consistent on that aspect of it."). Furthermore, the court noted that Appellant admitted, both to police officers and on the stand, that he "possessed a loaded .22 caliber automatic handgun" on the day in question, which he claimed he sold to Wright. *Id.* at 85.

---

[15] We note Appellant's interview is not included in the certified record. Nevertheless, he does not dispute that during the interview, he "admitted to selling a chrome gun to Shane Wright earlier in the day before the robbery home invasion." *See* Appellant's Brief at 42, 49.

The testimony of Wilson alone, which was credited by the fact finder, was sufficient to support the guilty verdict. *See Hewlett*, 189 A.3d at 1008. Again, Appellant focuses on the criminal complaint, and not on the amended criminal information. *See* Appellant's Brief at 42-43. Regardless, Wilson testified that Appellant possessed a gun in the car before the home invasion, took the gun with him during the home invasion, and asked Wilson to dispose of the gun after the home invasion. *See* N.T., 9/3/19, at 14, 16, 17. Appellant is entitled to no relief.

In a related argument, Appellant also contends the guilty verdict was improperly based on his confession that was admitted in violation of the *corpus delicti* rule. Appellant's Brief at 44. Again, this argument presumes Appellant's conviction of persons not to possess firearms is based upon his statement to police that he sold a gun to Wright on the day of the murder. *See id.* ("[Appellant] was convicted of the persons not to possess charge based almost exclusively on his recorded statements."). However, as noted above, the trial court credited **Wilson's testimony** that he observed Appellant in possession of a firearm both before and after the home invasion. Thus, Appellant's "confession" was not necessary to support the guilty verdict.

Nevertheless, we also conclude there was no violation of the *corpus delicti* rule. Although Appellant has framed his claim as a challenge to the sufficiency of the evidence, we note "the *corpus delicti* rule applies to the admissibility of evidence[,]" for which our review is "limited to a determination

of whether the trial court abused its discretion." ***Commonwealth v. Otterson***, 947 A.2d 1239, 1249 (Pa. Super. 2008) (citation omitted).

"The *corpus delicti* rule begins with the proposition that a criminal conviction may not be based upon the extra-judicial confession of the accused unless it is corroborated by independent evidence establishing the *corpus delicti*[,]" that is "the occurrence of a loss or injury, and some person's criminal conduct as the source of that loss or injury." ***Commonwealth v. Ahlborn***, 657 A.2d 518, 520–21 (Pa. Super. 1995) (citation omitted).

> A trial court applies the *corpus delicti* rule in two phases:  (1) "In the first phase, the court determines whether the Commonwealth has proven the *corpus delicti* of the crimes charged by a preponderance of the evidence.  If so, the confession [or extrajudicial statement] of the defendant is admissible[;]" (2) "In the second phase, the rule requires that the Commonwealth prove the *corpus delicti* to the factfinder's satisfaction beyond a reasonable doubt before the factfinder is permitted to consider the confession [or extrajudicial statement] in assessing the defendant's innocence or guilt."

***Commonwealth v. Bullock***, 170 A.3d 1109, 1118 (Pa. Super. 2017) (citation omitted).

With regard to the first phase of the *corpus delicti* rule, Appellant argues Wilson's testimony, that he observed Appellant with a gun, was insufficient to establish by a preponderance of the evidence that Appellant, in fact, possessed a gun on the evening in question.  Appellant's Brief at 46.  He emphasizes that Wilson admitted he (Wilson) possessed and disposed of the gun, later lied to police about that fact, and was convicted of several *crimen falsi* offenses.  ***Id.***  Further, Appellant asserts the Commonwealth did not

present evidence he had a prior conviction prohibiting his possession of a firearm until **after** his statement was admitted into evidence. ***Id.***

With regard to the second phase, Appellant contends the Commonwealth failed to prove beyond a reasonable doubt that he possessed "a .22 Ruger during the homicide and robbery that occurred on October 31, 2016." Appellant's Brief at 49. He maintains that, although he admitted he possessed the gun "at a different time and under a different set of circumstances[,]" the Commonwealth was required to prove he possessed the gun "pursuant to the factual scenario described" in the amended information. ***Id.*** at 49-50. Again, Appellant insists the trial court found Wilson's testimony "not credible." ***Id.*** at 49.

In addressing this claim, the trial court explained:

[T]here was sufficient evidence under the *corpus delicti* rule to support the court's admission of [Appellant's] statements to Agent Peacock that he possessed the revolver.

Not only was there direct evidence from Casey Wilson but there was also corroborating circumstantial evidence including, but not limited to, the loaded magazine found at the scene where [Appellant] was present, the magazine fitting in the gun given to Mr. Wilson and hidden by him, and the stipulation by the parties that [Appellant] was previously convicted of a crime precluding him from possessing a weapon. . . . Contrary to what [Appellant] argued, the stipulation was entered into evidence **prior to** [Appellant's] admission being entered into evidence.

\* \* \*

[Moreover, with regard to the second phase, t]he Commonwealth has clearly proven beyond a reasonable doubt that the "injury or loss" was consistent with the crime having been committed. The evidence was in fact overwhelming that

- 31 -

[Appellant] possessed the gun and was not permitted to do so given his prior conviction.

Very recently, in **Commonwealth v. Harper**, [230 A.3d 1231 (Pa. Super. 2020)], the Superior Court addressed a *corpus delicti* challenge in connection with a persons not to possess conviction. The burden on the Commonwealth was to establish that the defendant "possessed a firearm." Unlike in this case, the Commonwealth failed to meet that burden because there was "not a scintilla of evidence connecting [Harper] to the scene of the underlying shooting, the casings found, or the particular shooting itself." The only evidence was Harper's admission to carrying a gun on the night in question. In this case, [Appellant] was observed carrying a gun to and from a shooting and he requested another to discard the gun. Moreover, the gun was found and identified. Clearly, the corpus was established.

Trial Ct. Op., 4/7/20, at 6-8 (emphasis added).

Upon our review, we conclude the trial court thoroughly addressed and properly disposed of Appellant's *corpus delicti* challenge on appeal. Appellant's stipulation that he had a prior, enumerated conviction which prohibited him from possessing a firearm, coupled with Wilson's testimony that he observed Appellant in possession of a firearm both before and after the home invasion, was sufficient to establish the corpus of the crime.[16] Thus, the trial court did not abuse its discretion in admitting, and considering, Appellant's statement that he was in possession of a firearm on the night in question. **See Bullock**, 170 A.3d at 1117–18; **Otterson**, 947 A.2d at 1249.

_____

[16] As noted **supra**, while the trial court found Wilson's credibility suspect in some respects, the court was "convinced beyond a reasonable doubt that [Wilson] saw [Appellant] with a gun." N.T., 9/3/19, at 84-85 ("I think his testimony was clear and consistent on that aspect of it.").

Lastly, Appellant challenges the weight of the evidence supporting his firearms conviction.[17] Our review is guided by the following:

> "The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none or some of the evidence and to determine the credibility of the witnesses." Resolving contradictory testimony and questions of credibility are matters for the finder of fact. It is well-settled that we cannot substitute our judgment for that of the trier of fact.

***Commonwealth v. Miller***, 172 A.3d 632, 642 (Pa. Super. 2017).

> Thus,

> [w]hen a trial court evaluates a weight of the evidence claim, the trial court may award relief only "when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail."

> On appeal, the inquiry differs. When it considers a weight claim, an appellate court must review the trial court's exercise of discretion. "A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court." "A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion." **We do not contemplate the underlying question of whether the verdict actually was against the weight of the evidence. Rather, we evaluate the trial court's decision of that issue, and we do so under an abuse of discretion standard.**

***Commonwealth v. Clemons***, 200 A.3d 441, 463–64 (Pa. 2019) (citation omitted; emphasis and paragraph break added), *cert. denied*, 140 S. Ct. 176 (2019).

---

[17] Appellant properly preserved his weight of the evidence claim in a post-verdict motion. ***See*** Pa.R.Crim.P. 607(A) (mandating a weight of the evidence claim be raised in the first instance before the trial court); Appellant's Post-Verdict Motion, 9/6/19, at 6-7 (unpaginated).

In the present case, Appellant argues his firearms conviction was "based wholly on conjecture" because the evidence presented at trial established only that Wilson, not Appellant, "possessed the firearm that was presented at trial." Appellant's Brief at 36-37. He emphasizes Wilson's testimony – that Appellant possessed the firearm – was "not corroborated by any evidence." *Id.* at 37. Moreover, Appellant notes that the gun used in the home invasion would have been unloaded since the magazine was recovered from the crime scene, but Agent Peacock testified that the gun recovered at Victoria Gardens had to be unloaded. *See id.* at 38. Thus, he claims, it could not have been the same gun. Finally, although during his police statement, Appellant identified a photo of the gun he purportedly sold to Wright, he notes that Agent Peacock acknowledged the gun in the photo "appeared to be more silver than the one that was presented at trial." *Id.* Again, no relief is due.

In its order denying Appellant's weight of the evidence claim, the trial court opined:

> [Appellant] argues that a magazine was found at the scene of the homicide, yet Agent Peacock allegedly testifies that the gun he sent to the lab had to be "unloaded". [Appellant] argues as well that the color of the gun as depicted in different photographs shown to [Appellant] and an alleged accomplice was different than the actual gun that was produced at trial.
>
> [Appellant's] argument is addressed to the discretion of the Court. The Court finds that these facts were not so clearly of greater weight that to ignore them would be to deny justice. The verdict in this Court's opinion was not so contrary to the evidence as to shock the Court's sense of justice. While the Court understands that there are discrepancies in testimony, it is up to the fact finder to decide what to believe, if anything. The Court finds that the evidence produced at trial was not only sufficient .

. . but also clearly of sufficient weight to support the verdict. [T]he facts as presented by [Appellant] in [his] argument are not clear and weighty as to shock this Court's sense of justice.

Order, 10/17/19, at 1-2.

We agree. The trial court credited Wilson's testimony that he observed Appellant with a firearm both before and after the home invasion. Appellant's haggling over the color of the firearm that he purportedly sold versus the firearm recovered at Victoria Gardens is a red herring. Agent Peacock showed Appellant a photo of the recovered firearm, and Appellant identified the gun in the photo as the one he allegedly sold to Wright. N.T., 9/3/19, at 50-51. Any discrepancy between the color of the gun as it appeared in the photo, and the color of the actual gun presented as evidence at trial was for the fact finder to resolve.

Moreover, Appellant's contention that Agent Peacock testified the gun recovered at Victoria Gardens was loaded is also a mischaracterization. Appellant is referring to the following excerpt from the firearms trial:

[Commonwealth:] . . . [D]o you know when this picture [of the gun recovered at Victoria Gardens] was taken?

[Agent Peacock:] The specific date not without looking at my report. This was the .22 in question which was recovered by myself behind the bushes at [Victoria Gardens]. We conferred with the lab as far as how we were going to process it. This picture was taken while we made it safe, **unloaded it to package it to go to a lab**.

N.T., 9/3/19, at 47-48 (emphasis added). However, only a few questions later, the Commonwealth asked Agent Peacock if there was a magazine in the handgun he located in the bushes at Victoria Gardens. *Id.* at 49. Agent

- 35 -

Peacock responded: "There was not." *Id.* He further explained that he subsequently loaded the handgun with the magazine recovered from the murder scene, and the gun "functioned properly." *Id.*

Thus, we conclude the trial court acted within its discretion when it determined these purported inconsistencies in the evidence and testimony did not affect the verdict. Because Appellant failed to demonstrate the trial court abused its discretion in denying his weight of the evidence claim, no relief is warranted.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 07/07/2021