OPINION BY LAZARUS, J.:
*1006 Richard Hewlett appeals from the judgment of sentence, entered in the Court of Common Pleas of Philadelphia County, following his convictions of one count of aggravated assault[1] and two counts of violating the Uniform Firearms act.[2] After careful review, we affirm.
The Trial court summarized the facts of this case as follows:
[Hewlett] was inside the Eagle Bar, 3653 Germantown Avenue, Philadelphia, on December 24, 2014, at approximately 11:00 PM. Later, Tiffany Johnson entered the bar, and shortly thereafter, proceeded to the ladies' restroom. In doing so, she walked past [Hewlett] who was standing near the back door, approximately five (5) feet away from the restroom. A conversation ensued and [Hewlett] threatened her and demanded money stating she would have to "start paying rent." [Johnson] refused his demand and [Hewlett] engaged her in a further verbal dispute. Another patron interrupted the exchange and [Johnson] entered the ladies' restroom. [Hewlett] followed her into the restroom and struck her in the back of the head three (3) times. She turned to face him and [Hewlett] continued to strike her with a grayish black handgun. [Hewlett] struck her in the face and [ ] head with the gun. During the assault, which lasted two (2) to three (3) minutes, [Hewlett] took her wallet, identification, [a]ccess card, and $900.00 [ ]. Afterward, Hewlett walked out of the restroom and back into the bar. [Johnson] came after him and demanded that he return her wallet. A further physical confrontation ensued and defendant struck her several times with his fists. [Johnson] stated that although the facility was dimly lit, she could see her attacker's face. The following day, [Johnson] went to Albert Einstein Medical Center and was treated for a contusion on the right side of her forehead, a scar on her wrist, and an abrasion on the right side of her neck. The next day, [Johnson] gave a written statement to Sergeant Vincent Dayton.
On December 31, 2014, Police Officers Timothy Stephan and Keith White attempted to stop [Hewlett] after he disregarded a stop sign while operating a green 1998 Ford Explorer with a Pennsylvania license plate. The officers activated their lights and siren[,] but [Hewlett] failed to stop and instead accelerated to over fifty-five (55) miles per hour in a residential area. A high-speed chase ensued through several intersections, including the red light at Old York Road and Erie Avenue, and a stop sign at Percy and Butler Street. The vehicle struck the curb and began to roll along the sidewalk on the 3000 block of Delhi Street where[,] defendant exited and fled on foot. Officer Stephan pursued him and observed [Hewlett] clutching his waistband while fleeing over a distance of one (1) to two (2) blocks. During the foot chase, [Hewlett] briefly crouched between two parked vehicles in the 3800 block of [North] 10th street. When Officer Stephan attempted to arrest him, defendant shoved the officer and continued to flee.
Officer Stephan pursued [Hewlett] into the unlocked property at 3823 [North] 10th street. Once inside, [Hewlett] assumed a fighting stance and squared off *1007 with Officer Stephan. A physical confrontation followed with defendant throwing several punches and at one point lifting Officer Stephan from the ground and dropping him to within a foot of a nearby glass table. Officer Joseph Marion and his partner responded to a request for backup. When he saw [Johnson] throw Officer Stephan toward the table, Officer Marion entered the affray and exchanged blows with [Hewlett]. Finally, when [Hewlett] continued to resist arrest, Officer Marion engaged a probe from his Taser. The first probe did not stop [Hewlett] so he deployed a second one, which stunned [Hewlett] and officers were able to hand-cuff him. After [Hewlett's] arrest, Officer Stephan recovered a loaded silver and black .40 caliber Smith and Wesson handgun from the area where [Hewlett] had crouched between two parked vehicles in the 3800 block of [North] 10th street during the foot chase.
During her testimony at trial, [Johnson] observed that a spectator, Maurice McCall, was using his cellphone in the courtroom. The use of any electronic device in the courtroom is prohibited and signs are posted to that effect on the courtroom doors. After the jurors were escorted out of the courtroom, the prosecutor stated: "people don't want to give their names ... it is because of behavior like this that people don't want to come to court and testify." Upon examination of the phone's content, it was discovered that [McCall] was sending messages directly related to [Johnson's] testimony. [McCall] wrote, "This bitch just got on the stand on rich grove (phonetic)." This court admitted that evidence but did so with a curative instruction to the jury as to how they were to consider it. Additionally, [Johnson] testified that she received calls from [Hewlett] prior to her testimony at trial. During one of those calls, [Hewlett] identified himself as "Rick" and requested that [Johnson] not come to court and he told her that he would pay her. The jury also heard prison recordings of [Hewlett's] telephone conversations. A stipulation as to the authenticity of the recordings was presented to the jury. One of the calls included a conversation wherein [Hewlett] stated, "They found a gun with no clip. The clip [is] on 10th street some fucking where. You know what I'm saying." [Hewlett] also stated that he "was fighting the cops. I knocked like two, three cops up."
Trial Court Opinion, 3/1/17, at 2-4 (citations to record omitted).
On September 1, 2016, following a jury trial, the jury convicted Hewlett of aggravated assault of a police officer and carrying a firearm without a license. On the same date, pursuant to a stipulated waiver trial at which the parties stipulated to Hewlett's prior conviction of robbery and consequent ineligibility to possess a firearm, the trial court convicted him of possession of a firearm by a prohibited person. On November 6, 2015, the trial court imposed consecutive terms of imprisonment of five to ten years for aggravated assault, five to ten years for possession of a firearm by a prohibited person, and three and one-half to seven years for carrying a firearm without a license, for an aggregate term of 13½ to 27 years' imprisonment. On November 13, 2016, Hewlett filed a post-sentence motion, which the court denied by operation of law on March 15, 2016. On March 16, 2016, Hewlett timely appealed. Both Hewlett and the trial court have complied with Pa.R.A.P. 1925. On appeal, Hewlett raises the following issues:
1. Did the Commonwealth present sufficient evidence to find [Hewlett] guilty beyond a reasonable doubt?
*1008 2. Did the trial court abuse [its] discretion when it allowed the Commonwealth to present evidence from a spectator's cell phone that wasn't relevant to [Hewlett] [sic] and [thus,] the prejudicial effect of the evidence outweighed the probative value?
Brief of Appellant, at 3.
Hewlett first raises a sufficiency of the evidence claim. Our standard for reviewing challenges to the sufficiency of the evidence is well-settled.
The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.
Commonwealth v. Caban , 60 A.3d 120, 132-33 (Pa. Super. 2012), quoting Commonwealth v. Quel , 27 A.3d 1033, 1037-38 (Pa. Super. 2011).
First, Hewlett avers that the evidence was insufficient to support a conviction for aggravated assault against a police officer because his "actions rise no higher than resisting arrest ... as the evidence does not support that the appellant 'attempted to cause or intentionally or knowingly caused bodily injury to any of the officers' involved in this case." Brief of Appellant, at 14.
In Pennsylvania, an individual is guilty of aggravated assault against a police officer if he "attempts to cause or intentionally or knowingly cause a bodily injury to a police officer ... in the performance of duty[.]" 18 Pa.C.S.A. § 2702(a)(3). To prove aggravated assault against a police officer "[t]he Commonwealth need not establish that the [officer] actually suffered bodily injury; rather, it is sufficient to support a conviction if the Commonwealth established an attempt to inflict bodily injury ." Commonwealth v. Richardson , 431 Pa.Super. 496, 636 A.2d 1195, 1196 (1994) (emphasis added). The term "officer" is defined as "the officers, agents, employees and other persons referred to in subsection as follows: (1) Police Officer[.]" 18 Pa.C.S.A. § 2702(c)(1).
The Crimes Code defines the mens rea of "intent" as follows:
A person acts intentionally with respect to a material element of an offense when:
(i) if the element involves the nature of his conduct or a result thereof, it is his conscious object to engage in conduct of that nature or to cause such a result ; and
(ii) if the element involves the attendant circumstance, he is aware of the *1009 existence of such circumstances or he believes or hopes that they exist.
18 Pa.C.S.A. § 302(b)(1) (emphasis added).
When Officer Stephan confronted Hewlett in the property located at 3823 North 10th Street, Hewlett raised his hands, clenched them into fists, and assumed a fighting stance. Hewlett threw a punch at Officer Stephan and threw the officer's body towards a glass table, which he narrowly avoided. Immediately afterward, Officers Marion and Ortiz entered the property. Hewlett punched Officer Marion in the face, in the "area in between the nose and the upper lip." N.T. Jury Trial, 9/2/15, at 43. After Hewlett struck Officer Marion's face, Officer Ortiz tackled Hewlett to the ground. Although no further "significant strikes" contacted any of the officers, Hewlett continued to kick, elbow and punch the three officers. Id. at 21. In light of the foregoing, the evidence presented by the Commonwealth was clearly sufficient to sustain a conviction of aggravated assault against a police officer. Caban , supra .
Next, Hewlett avers that the evidence is insufficient to sustain a conviction for carrying a firearm without a license and possession of a firearm by a prohibited person.
The Uniform Firearms Act provides, in relevant part, as follows:
§ 6105. Persons not to possess, use, manufacture, control, sell or transfer firearms
(a) Offense Defined.-
(1) A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.
(b) Enumerated offenses.-The following offense shall apply to subsection (a):
* * *
Section 3701 (relating to robbery)[.]
* * *
§ 6106. Firearms not to be carried without a license.
(a) Offense defined.-
(1) Except as provided in paragraph (2), any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree.
18 Pa.C.S.A. §§ 6105(a) and (b), 6106(a).
In order to convict a defendant for possession of a firearm by a prohibited person, the Commonwealth must prove the defendant was previously convicted of a specific offense enumerated in section 6105. Commonwealth v. Jemison , 626 Pa. 489, 98 A.3d 1254, 1261 (2014). In order to convict a defendant for carrying a firearm without a license, the Commonwealth must prove: that the weapon was a firearm; that the firearm was unlicensed; and that where the firearm was concealed on or about the person, it was outside his home or place of business. Commonwealth v. Parker , 847 A.2d 745, 750 (Pa. Super. 2004). The Commonwealth may sustain its burden of proving every element of a crime beyond a reasonable doubt by means of wholly circumstantial evidence. Commonwealth v. Wise , 171 A.3d 784, 790 (Pa. Super. 2017).
Here, Hewlett exited a vehicle, following a high-speed chase, and fled from *1010 police while clutching his waistband. Police, during their pursuit, observed Hewlett crouching between two vehicles and viewed him place an item between the two parked cars. Later, police recovered a .40 caliber Smith and Wesson handgun from the area where Hewlett had been crouching. Additionally, Hewlett admitted to carrying a firearm in recorded prison telephone conversation with his girlfriend. In light of Hewlett's admission and the police officers' observations, a fact-finder could reasonably conclude that Hewlett had been in possession of the handgun. See Commonwealth v. Schley , 136 A.3d 511, 519 (Pa. Super. 2016), quoting Commonwealth v. Widmer , 560 Pa. 308, 744 A.2d 745, 751 (2000) (Commonwealth is entitled at trial to all reasonable inferences arising from the evidence). Furthermore, both parties stipulated to Hewlett's prior conviction of robbery and consequent ineligibility to possess a firearm. 18 Pa.C.S.A. § 6106.
Hewlett's only cogent challenge to the sufficiency of the evidence is that "a discrepancy [existed] as to the location of the recovered firearm" where police "testified ... that [it] was recovered on the 3800 block of 10th[S]treet however, police paperwork stated that [it] was recovered from the 3800 block of Delhi Street." Brief of Appellant, at 16. This argument is without avail. Mere conflict in the evidence does not render it insufficient; any discrepancies are for the fact finder to resolve. Commonwealth v. Hargrave , 745 A.2d 20, 22 (Pa. Super. 2000).
Hewlett's final claim on appeal is that the trial court abused its discretion when it allowed the Commonwealth to present evidence from a spectator's cell phone that was irrelevant and prejudiced his defense. Hewlett has waived this claim on appeal.
At his jury trial, Hewlett objected to the Commonwealth's request to present evidence of a spectator's cell phone; however, upon the court's request, counsel for Hewlett agreed to and drafted a curative instruction. Specifically, Hewlett's draft curative instruction, which was adopted by the trial court, stated that any testimony regarding a spectator's attempt to photograph Johnson be considered only for the "effect, if any, it had" on the witness's testimony and that "there is no evidence that [Hewlett] ... solicited this behavior." N.T. Jury Trial, 9/2/15, at 181. Hewlett acquiesced to the trial court's ruling and complied with its instruction to furnish it with a curative instruction. Therefore, he has waived any challenge to the court's ruling.[3] Commonwealth v. Einhorn , 911 A.2d 960, 976 (Pa. Super. 2006), citing Commonwealth v. Hill , 479 Pa. 346, 388 A.2d 689, 692 (1978) (defendant who requests and receives relief for alleged error may not seek additional relief at later time). See also Commonwealth v. Hallowell , 497 Pa. 203, 439 A.2d 1140, 1141 (1981) (litigant who seeks and receives specific relief for a given error cannot seek additional relief at a later time), citing Commonwealth v. Hoskins , 485 Pa. 542, 403 A.2d 521, 526 n. 12 (1979) ("since [appellant] failed to do anything *1011 more than object and request to the striking of testimony in some instances, he received all the relief requested and cannot now seek further relief.").[4]
Judgment of sentence affirmed.
Judge Ransom joins this Opinion.
Judge Bowes files a Concurring Opinion.
CONCURRING OPINION BY BOWES, J.:
I join the learned Majority's disposition of Appellant's sufficiency challenges. I disagree, however, with my colleagues' finding that Appellant waived his claim that the trial court abused its discretion when it permitted the Commonwealth to introduce evidence that witness Tiffany Johnson felt intimidated due to the actions of a spectator. I would reach the merits and find no abuse of discretion. Finally, I distance myself from language that not only approves of the trial judge searching spectators' cell phones, but tacitly encourages judges to do so in the future.
I first address why there is no waiver herein. During Ms. Johnson's testimony, Appellant objected to a question and the court asked to see counsel at sidebar. I quote the relevant exchange in full:
THE COURT: Let the record reflect the jurors have left the room. What was that about?
THE SHERIFF: There is a reason, Your Honor.
THE COURT: Is there anyone in this courtroom recording these proceedings or photographing anyone here?
THE SHERIFF: Your Honor, give me one second, all right. Come on, Man.
(Sheriff escorted the defendant out the courtroom.)
THE COURT: There is a big sign on the door that says don't bring phones into the courtroom. Don't use them if they're in here. I will ask my question again. Is there anybody here taking photographs or recording these proceedings?
THE SHERIFF: Your Honor I don't know what the young man in the red is doing but I did have to ask him to put his phone away once already. So I don't know what's going on. I am watching the custody. I'm doing the best I can in the audience.
THE COURT: Are you recording these proceedings?
*1012 MALE VOICE: No, no when you stepped out the courtroom I thought it was okay for me to just put in my text message. I ain't taking pictures.
THE COURT CRIER: There is no cell phone usage in the courtroom, period.
MALE VOICE: I am not using it.
THE COURT CRIER: All cells [sic ] phones are supposed to be off.
THE COURT: Why is it that every trial someone comes into this building intent on recording and photographing?
FEMALE VOICE: No, Your Honor, he is not recording anything.
THE COURT: We're going to find out, aren't we? See what's on his phone.
THE WITNESS: He had the phone up like this (indicating).
THE SHERIFF: You want it, Your Honor?
THE COURT: Did you look at it? I have an obligation to conduct this case, sir, in a civil fashion, the way people conduct themselves in a civil society. That means that no one should be threatened, you or this witness, and she has represented that you photographed her.
MALE VOICE: Your Honor, you can look in my phone right now.
THE COURT: Well I just want to you [sic ] know why.
MALE VOICE: But listen to me.
THE COURT: If you had kept your phone in your pocket, we wouldn't be having this discussion.
MALE VOICE: Your Honor, I need my phone.
THE COURT: Every single trial.
MALE VOICE: I need to get a ride home.
THE COURT: What is your name?
MALE VOICE: Maurice McCall.
THE COURT: Come to the bar. On the other side. What is your name?
MAURICE MCCALL: Maurice McCall, sir.
THE COURT: Spell your first name.
MAURICE MCCALL: M-A-U-R-I-C-E.
THE COURT: Spell your last name.
MAURICE MCCALL: M-C-C-A-L-L.
THE COURT: One more time.
MAURICE MCCALL: M-C-C-A-L-L.
THE COURT: What is your date of birth?
....
THE COURT: Sir, this is a public courtroom. Everyone is welcome but you have to follow the rules.
MAURICE MCCALL: Okay, sir.
THE COURT: Keep your phone in your pocket. Have a seat.
(At 2:45 p.m. the Court took a brief recess.)
N.T., 9/2/15, at 174-78. It appears that the recess was for the trial judge to search McCall's cell phone, as the proceedings resume with the following:
THE COURT: What does that one entry say? There is at least one entry here, sir, where you text the following words: This bitch just got on the stand on rich grove (phonetic).
You've got nothing better to do than come to court and carry on in this fashion? This phone will be held in the event the District Attorney's Office wishes to get a search warrant and search your phone, and if it's appropriate, it's their decision, not mine, to take action. So your phone will be held until such time as a decision is made.
MAURICE MCCALL: All right.
*1013 THE COURT: And you or no one else is to bring a cell phone in this courtroom.
Id. at 178.
The Commonwealth informed the trial court that it intended to elicit from Ms. Johnson what she observed:
[COMMONWEALTH]: Yes. I would be asking to present this information to the jury. This is corroboration of what this witness has been going through: Calls, intimidation. When he makes the argument in his closing that people don't want to give their names, that that's some error on the Commonwealth, it's because of behavior like this that people don't want to come to court and testify. And she doesn't want to give names of people in the courtroom. And it's direct evidence of what's happening while she's taking the stand.
....
THE COURT: ... So how do you propose to do that?
[COMMONWEALTH]: Well, I will ask this witness, Your Honor, did she notice someone, you know, pulling out the phone in the courtroom and she alerted the court staff. After that I will have a detective here tomorrow to do a search warrant, have Your Honor sign it, look into the phone and testify to what he found on the phone.
....
[APPELLANT]: Oh, I'm sorry, Your Honor. Please note my objection to the admission of any of that evidence regarding what happened with the phone. There is no evidence that my client knows the man in the red shirt, was acting at his direction or that it has anything to do with this case. The admission of that evidence would be purely prejudicial and not probative of any element in this case.
THE COURT: You will give a curative instruction as to how they should receive it and I will tell them there is no evidence that your client solicited the behavior and that they may receive the evidence for one purpose only, for what effect, if any, it had on this witness' testimony.
[APPELLANT]: Understood, Your Honor .
Id. at 179-81 (emphases added).
Trial resumed, and the Commonwealth asked Ms. Johnson if she "notice[d] any behavior from someone in the audience?" Id. at 182. She explained that she saw a man put his phone up, causing her to tell a courtroom officer. The trial judge then stated, "Ladies and Gentlemen, what you heard must be received by you for one purpose only; that is what effect, if any, it had on Ms. Johnson's testimony. There is no evidence that the defendant, Hewlett, solicited this behavior." Id. at 183.
The Majority determines that Appellant waived his claim because "upon the court's request, counsel for Hewlett agreed to and drafted a curative instruction." Majority Opinion, at 1010. I respectfully disagree. The trial judge unmistakably denied Appellant's motion to bar any mention of the incident, and ordered Appellant to draft a curative instruction. The phrase "you will give a curative instruction" cannot possibly be construed as a request.
Additionally, the Majority appears to attach significance to the fact that Appellant stated "Understood, Your Honor" after the trial court denied his motion and ordered him to craft a curative instruction.[1] If the *1014 Majority construes that response as waiving any objection, I disagree with that conclusion as well. In context, Appellant was plainly stating that he respected and understood, but did not agree with, the trial court's ruling. From now on, litigants would be well-advised never to agree in any fashion with a court's ruling, lest this Court later mistake courtesy for capitulation. Finding waiver on these terms discourages civility and promotes combativeness. In my view, Appellant preserved his objection, and I would reach the merits of his claim.
Nonetheless, I find no trial court error in allowing the Commonwealth to ask Ms. Johnson what she observed. The trial judge was present and able to discern if Ms. Johnson's demeanor was affected by her observations, and I agree that an instruction was warranted if her testimony was influenced by what she saw.[2] Furthermore, the trial court did not inform the jury what the messages said, and there is no indication that the jury was aware that the trial judge conducted his own review of the phone.[3] I therefore agree that the instruction was proper.
I now address the Majority's footnote discussing the trial court's search of McCall's cell phone. I would think that this Court would recognize the oddity of a trial judge donning the hat of a police officer and searching a spectator's phone for evidence. The Majority, however, believes that the search was a proper mechanism to enforce its cell phone restriction policy:
We are aware of the recent decision of our Supreme Court, Commonwealth v. Fulton , --- Pa. ----, 179 A.3d 475 (2018), in which the Court held that evidence gathered from a cell phone powered on without a warrant could not be used against a defendant. Here, we make no determination as to whether the contents of the spectator's cell phone could be used against either the spectator or the defendant, where the defense formulated a curative instruction that was accepted by the trial court and read to the jury. Rather, we simply affirm the authority of a trial court to enforce its order that a cell phone may not be used in its courtroom for any purpose , particularly during a trial and especially if the effect of such use is to *1015 intimidate a witness while she is testifying.
Majority Opinion, at 1010 n.3 (emphasis added).
It is difficult to read this language as anything other than an approval of the search, which I do not join. First, it seems to me that McCall consented to the search in the hopes that the judge would immediately return the phone. N.T., 9/2/15, at 93 ("Your Honor, you can look in my phone right now."). Accordingly, we should decline to address whether the judge would have been permitted to search without that consent, which he clearly intended to do.[4] Id. ("We're going to find out, aren't we? See what's on his phone."). Having dipped our toe in these waters for no discernible reason, I must note my disagreement with the Majority's compulsion to "affirm the authority of a trial court to enforce its order that a cell phone may not be used for any purpose."
The Majority assumes, with no citation to authority, that the trial judge's duty to oversee an orderly trial permitted a search of McCall's cell phone. That conclusion ignores Fourth Amendment concepts as applied to an issue that, to my understanding, is grounded in an interplay of the First and Sixth Amendments to the United States Constitution. "We start with the proposition that it is a 'public trial' that the Sixth Amendment guarantees to the 'accused.' The purpose of the requirement of a public trial was to guarantee that the accused would be fairly dealt with and not unjustly condemned." Estes v. Texas , 381 U.S. 532, 538-39, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965). The High Court has also recognized a First Amendment right to attend a criminal trial. Richmond Newspapers , Inc. v. Virginia , 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980) (plurality); Globe Newspaper Co. v. Superior Court for Norfolk Cty. , 457 U.S. 596, 603, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982) ("Although there was no opinion of the Court in [ Richmond Newspapers ], seven Justices recognized that this right of access is embodied in the First Amendment, and applied to the States through the Fourteenth Amendment."). Hence, the public may attend the trial, but "the atmosphere essential to the preservation of a fair trial-the most fundamental of all freedoms-must be maintained at all costs." Estes , supra at 540, 85 S.Ct. 1628.
I thus have no issue with the trial judge's order or enforcement thereof. Where I depart from my learned colleagues is their assumption that the court's authority to enforce its cell phone restriction justified the search. As indicated by the foregoing authorities, I view the cell phone order as a permissible restriction of otherwise-protected First Amendment activity due to the overriding governmental interest in preserving the integrity of the trial. Thus, McCall was subject to the cell phone regulation as a condition of entering the courtroom. The Majority missteps, however, by presuming that a lawful restriction of First Amendment rights means that a spectator has somehow checked his Fourth Amendment rights at the door as well.
I will assume arguendo that the court was permitted to seize the phone as opposed to employing other measures, such as ejecting McCall from the courtroom or initiating contempt proceedings. Once seized, the interest in enforcing decorum has been satisfied. Simply put, it is irrelevant why McCall was using his cell phone.
*1016 Perhaps McCall was intimidating the witness, but maybe he was texting a friend, reading Twitter, or checking a sports score. The trial judge did not know what McCall was doing with his phone, which is precisely why he searched it.
Judges are not vested with the power to investigate crime or to collect evidence, and a judge's role in the investigatory process is neutral. See Commonwealth v. Dougalewicz , 113 A.3d 817, 824 (Pa.Super. 2015) ("[F]or a search to be reasonable under the Fourth Amendment or Article I, Section 8, police must obtain a warrant, supported by probable cause and issued by an independent judicial officer, prior to conducting the search.") (quoting Commonwealth v. Gary , 625 Pa. 183, 91 A.3d 102, 107 (2014) ). Furthermore, I recognize that discussing Fourth Amendment concepts of unreasonable searches and seizures assumes a State actor. See Commonwealth v. Demor , 942 A.2d 898 (Pa.Super. 2008) (off-duty paramedic in uniform was not State actor when he directed driver to turn into a parking lot while police responded to scene; therefore, exclusionary rule did not apply). None of this is to say that the trial judge was a State actor for these purposes or that McCall's Fourth Amendment rights were violated. The point is that the Majority does not recognize a distinction between preventing witness intimidation, which the trial judge was surely authorized to do, and prosecuting witness intimidation, which the trial judge has no authority to do. There is no doubt that witness intimidation is a serious crime, 18 Pa.C.S. § 4952. If the judge believed that McCall was committing that crime, he should have referred the matter to the proper personnel. It is practically certain that many such persons were in the criminal courthouse halls, if not the courtroom itself.
In sum, there was no need to search the phone. Whether McCall was intimidating a witness or using his phone for some benign purpose, his actions interfered with the solemn administration of justice and warranted remedial steps on that basis alone. If the trial judge believed a crime was being committed, the proper course was to let law enforcement officials investigate the matter. For these reasons, I cannot join those portions of the opinion.

18 Pa.C.S.A. § 2702(a)(3).

18 Pa.C.S.A. §§ 6105, 6106.

We are aware of the recent decision of our Supreme Court, Commonwealth v. Fulton , --- Pa. ----, 179 A.3d 475 (2018), in which the Court held that evidence gathered from a cell phone powered on without a warrant could not be used against a defendant. Here, we make no determination as to whether the contents of the spectator's cell phone could be used against either the spectator or the defendant, where the defense formulated a curative instruction that was accepted by the trial court and read to the jury. Rather, we simply affirm the authority of a trial court to enforce its order that a cell phone may not be used in its courtroom for any purpose, particularly during a trial and especially if the effect of such use is to intimidate a witness while she is testifying.

Even if Hewlett had not waived this claim, it is meritless. At trial, Johnson noticed a man in the courtroom texting and attempting to photograph her on his cell phone. The trial court stopped the proceedings, excused the jury, examined the man's cell phone and found a recent text message in which he told an unknown party that "[Johnson] just got on the stand on rich grove (phonetic)." Consequently, the trial court confiscated the phone and allowed the Commonwealth to elicit evidence of the spectator's use of the phone in the courtroom on the condition that Hewlett draft a curative instruction for the jury. The text message was not submitted to the jury, but the Commonwealth was ultimately permitted to offer Johnson's testimony that she saw a man in the courtroom using his phone during her testimony and then attempt to photograph her.
It was well within the sound discretion of the trial court to allow evidence that bore on Johnson's credibility and the effect that the spectator's actions had on her testimony. Pa.R.E. 607 ; Commonwealth v. Golphin , 161 A.3d 1009, 1026 (Pa. Super. 2017) (evidence that bears on the credibility of witness is relevant and admissible). Her immediate report of the incident to the deputy sheriff demonstrates that she was disturbed and/or afraid of the spectator's attempt to record her while providing testimony. The jury presumably followed the curative instruction Hewlett drafted, and thus, it eliminated any potential prejudice. Commonwealth v. Poplawski , 634 Pa. 517, 130 A.3d 697, 717 (2015), citing Commonwealth v. Carter , 537 Pa. 233, 643 A.2d 61, 77 (1994) (trial court's instruction to jury not to consider statements as evidence cured any potential prejudice).

The Majority's analysis is asymmetrical in that it finds that Appellant "acquiesced to the trial court's ruling" by furnishing a curative instruction and thereby "waived any challenge to the court's ruling." Majority Opinion, at 1010 11. There is nothing to cure if Appellant was, in fact, waiving his objection to the admission of such evidence. This is not a situation where the litigant agreed to a curative instruction as an alternative to some other relief. See Commonwealth v. Thoeun Tha , 64 A.3d 704, 713 (Pa.Super. 2013) (noting that counsel "agreed to the trial court's proposed curative instruction in lieu of granting the motion for judgment of acquittal").

As it relates to the subsequent search of the cell phone, it is impossible to determine to what extent, if any, the discovery of the message influenced the trial court's decision to permit the introduction of Ms. Johnson's observations. In my view, the instruction was warranted whether actual intimidation occurred or not, because it was Ms. Johnson's behavior on the stand combined with her subjective belief that justified the instruction. In short, whether Ms. Johnson was actually intimidated is immaterial, the question is whether she believed that she was being intimidated.
My finding that the court did not err therefore rests on the understanding that the witness's testimony was, in fact, affected in some fashion by her belief that she was being intimidated, warranting an instruction to the jury to aid its assessment of her demeanor. To the extent the Majority suggests that the instruction was permitted because the search of McCall's cell phone appeared to corroborate that belief, I disagree.

While I find no error, I believe that it is preferable in such situations to instruct the jury that there was no evidence that witness intimidation actually occurred, and that the spectator may have been using the phone for a benign purpose.

Moreover, McCall is obviously not a party to this litigation, and we lack any advocacy on this point.