J-A16044-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DENNIS BERNARD WALLER, JR. | : | |
| | : | |
| Appellant | : | No. 2168 EDA 2021 |

Appeal from the Judgment of Sentence Entered July 13, 2021
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0005033-2019

BEFORE: McLAUGHLIN, J., McCAFFERY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:          **FILED JUNE 23, 2022**

Dennis Bernard Waller, Jr. (Waller) appeals from the judgment of sentence entered in the Court of Common Pleas of Delaware County (trial court) after his bench conviction of firearms not to be carried without a license and persons not to possess a firearm.[1] On appeal, he challenges the sufficiency and the weight of the evidence. We affirm.

The trial court summarized the evidence at the non-jury trial as follows:

> At trial, the Commonwealth first presented the testimony of Officer German Sabillon. (N.T., 3/10/21. p. 21). Officer Sabillon is a sixteen year veteran of the City of Chester Police Department. (N.T., 3/10/21, p. 21). On February 1, 2019, Officer Sabillon was on duty in the City of Chester, Delaware County, Pennsylvania and assigned to the Highway Unit. (N.T., 3/10/21, p. 22). The

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 6106(a)(1), 6105(a)(1).

weather conditions for February 1, 2019 included a light falling snow that made driving difficult. (N.T., 3/10/21, p. 56). At 11:56 a.m. on February 1, 2019, Officer Sabillon received a radio dispatch of an attempted robbery involving a firearm. (N.T., 3/10/21, p. 22). The alleged perpetrators were identified as three black males operating a dark red pickup truck with tinted windows. (N.T., 3/10/21. p. 22).

Officer Sabillon was canvassing the City of Chester in his marked police unit when he observed a vehicle matching the description of the subject vehicle parked and facing eastbound near 3rd Street and Central Avenue. (N.T., 3/10/21, p. 23). Three black males were approaching the vehicle and appeared to be preparing to enter the stationary motor vehicle. (N.T., 3/10/21, p. 23). As Officer Sabillon was traveling westbound on 3rd Street and snow was falling, he was required to travel farther down 3rd Street prior to making a U-turn to initiate a vehicle stop. (N.T., 3/10/21, p. 23).

By the time Officer Sabillon executed the U-turn maneuver, the red pickup truck had traveled to the corner of 3rd Street & Central Avenue and was making a left turn onto Central Avenue. (N.T., 3/10/21, p. 23). Officer Sabillon also turned onto Central Avenue in pursuit, but a vehicle was now between his marked police unit and the dark red pickup. (N.T., 3/10/21, pp. 23 & 26). Although the vehicles were traveling slowly given the snow and the uphill grade of that portion of Central Avenue, Officer Sabillon was eventually able to pull directly behind the dark red pickup. (N.T., 3/10/21, p. 27). At or near the intersection of Central Avenue and 9th Street, Officer Sabillon activated the lights and sirens of his marked unit to conduct a traffic stop; however, the dark red pickup failed to yield. (N.T., 3/10/21, p. 29). The dark red pickup turned right onto 9th Street with Officer Sabillon still in pursuit. (N.T., 3/10/21, p. 29).

At 7th Street and Tillman Street, the dark red pickup stopped, two black male passengers exited and attempted to flee the scene on foot. (N.T., 3/10/21, pp. 29-30). The operator of the red pickup did not flee the vehicle and was detained by Officer Sabillon. (N.T., 3/10/21, pp. 30-31). At trial, Officer Sabillon identified Appellant Waller as one [of] the two men who exited the dark red pickup truck and attempted to flee from police. (N.T., 3/10/21, p. 35). When Appellant Waller attempted to flee the scene, he was observed by Officer Sabillon holding the waistband

of his pants when he began to run. (N.T., 3/10/21, p. 48). Based on his training and experience, Officer Sabillon believed Defendant Waller to be concealing some object in his waistband. (N.T., 3/10/21, p. 48). Appellant Waller was ultimately taken into custody that day when he was located at or near 7th Street and Central Avenue in the Senior Village retirement community. (N.T., 3/10/21, p. 50).

After Officer Sabillon restrained the driver of the red pickup truck, Officer Sabillon joined by Officer Shiller, canvassed the area where Appellant Waller had fled and was ultimately apprehended. (N.T., 3/10/21, p. 31). Officer Sabillon tracked a single set of footprints left in the snow to a barbeque grill located outside one of the residential units. (N.T., 3/10/21, pp. 31, 64, & 73). Officer Shiller opened the grill and the officers observed and secured a firearm that was stored inside. (N.T., 3/10/21, p. 31, Exh. C-3). The footprints in the snow created by the fleeing offender appeared to be made by a Timberland boot. (N.T., 3/10/21, pp. 36 & 75, Exhs. C-4, C-5). When Appellant Waller was taken into custody, he was wearing Timberland boots and those boots were photographed by police. (N.T., 3/10/21, pp. 36 & 75; Exh. C-6). The tread on the sole of Defendant Waller's boots matched the footprints left in the fresh snow near the grill where the handgun was located. (N.T., 3/10/21, p. 75, Exhs. C-5 & C-6). This Court found the testimony of Officer Sabillon to be competent, candid, and credible.

The Commonwealth next presented the testimony of Police Officer Robert Ticknor. (N.T., 3/10/21, p. 96). Officer Ticknor is an eight-year veteran of the City. of Chester Police Department. (N.T., 3/10/21, p. 97). On February 1, 2019, Officer Ticknor was on patrol in the City of Chester dressed in full police uniform and operating a marked patrol vehicle. (N.T., 3/10/21, p. 97). At or near 7th Street and Tilghman Street, Officer Ticknor observed a suspect matching the description of a reported suspect who fled a traffic stop. (N.T., 3/10/21, p. 97). Officer Ticknor pursued this individual and later observed him moving from home-to-home attempting to force entry through the rear doors of those units. (N.T., 3/10/21, pp. 99-100 & 106). Officer Ticknor identified himself as a police officer and instructed the individual to halt but the suspect failed to comply. (N.T., 3/10/21, p. 103). At trial, Officer Ticknor identified Appellant Waller as the suspect he pursued on February 1, 2019. (N.T., 3/10/21, pp. 99-100). Officer Ticknor radioed in Appellant Waller's position to his fellow

officers, as Officer Ticknor was unsuccessful in apprehending Appellant Waller. (N.T., 3/10/21, pp. 101-102). This Court found the testimony of Officer Ticknor to be competent, candid, and credible.

The Commonwealth also presented the testimony of Officer Mark Crawford. (N.T., 3/10/21, p. 108). Officer Crawford is a twenty-year veteran of the City of Chester Police Department. (N.T., 3/10/21, p. 109). On February 1, 2019, Officer Crawford was on patrol in the City of Chester dressed in full police uniform and operating a marked patrol vehicle. (N.T., 3/10/21, p. 109). Officer Crawford responded to a radio call issued at 11:54 a.m. regarding a robbery at 6th Street and Penn Street, Chester, Delaware County, Pennsylvania. (N.T., 3/10/21, p. 110). Officer Crawford entered the scene on the 700 block of Tillman Street and was informed two suspects had fled on foot from a stopped dark red pickup. (N.T., 3/10/21, p. 110).

Officer Crawford canvassed that locale and observed an individual matching the description of a robbery suspect exit the area of a residential unit near a parking lot off Tillman Street. (N.T., 9/23/20, p. 71). Officer Crawford directed that individual to stop but the suspect continued to run south on Central Avenue. (N.T., 3/10/21; p. 110). Officer Crawford pursued and observed the fleeing suspect turn into the rear of the 600 block of Tilghman Street. (N.T., 3/10/21, p. 11). Officer Crawford then observed this individual at the backdoor of a residence and it appeared to Officer Crawford the suspect was attempting to force entry into the home. (N.T., 3/10/21, p. 112).

The suspect then fled towards Central Avenue approaching Logans Way where he entered a waiting vehicle. (N.T., 3/10/21, p. 113). This vehicle then traveled one block down Logans Way towards Edwards Street when the suspect exited the vehicle and fled in the direction of Chatham Estates also referred to as the Senior Village. (N.T., 3/10/21, p. 113). Still in pursuit, Officer Crawford approached the suspect, drew his firearm and directed the suspect to stop. The suspect ultimately complied and was taken into police custody. (N.T., 3/10/21, p. 113). At trial, Officer Crawford identified Appellant Waller as the fleeing suspect he apprehended on February 1, 2019. (N.T., 3/10/21, p. 114). This Court found the testimony of Officer Crawford to be competent, candid, and credible.

The parties agreed to certain relevant stipulations. The report of Detective Louis Grandizio of the Forensic Science Unit Ballistics Section of the Delaware County District Attorney's Office Criminal Investigation Division was marked and admitted as exhibit G-10. (N.T., 3/10/21, pp. 127-128). Detective Grandizio determined the firearm secured by law enforcement on February 1, 2019 (Exh. C-9) was operational. (N.T., 3/1.0/21, pp. 128 & Exh. C-10). Exhibit C-12 is Pennsylvania State Police Certificate confirming Appellant Waller did not possess a valid license to carry a firearm pursuant to 18 Pa.C.S. § 6109 nor did Appellant Waller possess a Sportsman Firearm Permit issued under the provisions of the 18 Pa.C.S. § 61069(c). (N.T., 3/10/21, p. 129, Exh. C-12). Finally, exhibit C-13 is a certified record form the office of Clerk of Courts, Chester County, Pennsylvania and confirms on July 9, 1998 Appellant Waller was sentenced for the following crimes: (1) Criminal Attempt to Commit Murder with a sentence of thirteen to twenty-six years and (2) Robbery of a Motor Vehicle with a sentence of ten to twenty years. (N.T., 3/10/21, p. 130, Exh. C-13).

Trial Court Opinion, 12/17/21, at 2-9 (footnotes omitted).

At the end of trial, the trial court found Waller guilty of the two above-mentioned firearm offenses and later sentenced him to serve an aggregate five to ten years' imprisonment. Waller filed a post-sentence motion for judgment of acquittal or new trial, which the trial court denied. After new counsel was appointed, Waller filed this appeal challenging both convictions.

Waller first challenges the sufficiency of the Commonwealth's evidence to establish the possession element for both of his firearm convictions because it had failed to prove beyond a reasonable doubt that he had possessed or had

knowledge of the handgun found inside the grill.[2]  He argues that the Commonwealth's case relied primarily on a set of footprints from the Timberland boot leading to the grill where the police found the firearm.  While he also wore Timberland boots, Waller notes that the Commonwealth presented no evidence that the police took any measurements of the footprints to match them to his boots.  He also observes no evidence was presented that the other male who fled was not wearing Timberland boots. Moreover, Waller highlights that the Commonwealth presented no witnesses who saw him with the firearm or place it inside the grill.  To that end, he notes that there was no forensic evidence matching him to the firearm.

However, the Commonwealth did present sufficient evidence to establish that Waller possessed the firearm and discarded it just moments before he was apprehended.  First, Officer Sabillon testified that he stopped the red pickup truck and saw Waller flee while holding the waistband of his pants.  Based on his training and experience, Officer Sabillon testified this

---

[2] "We review claims regarding the sufficiency of the evidence by considering whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." **Commonwealth v. Miller**, 172 A.3d 632, 640 (Pa. Super. 2017) (citation omitted).  "Further, a conviction may be sustained wholly on circumstantial evidence, and the trier of fact—while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence.  In conducting this review, the appellate court may not weigh the evidence and substitute its judgment for the fact-finder." **Id**.

matched someone concealing some object in his waistband, which the trial court credited.

Second, as the trial court summarized above, the Commonwealth presented three police officers who all testified to seeing Waller flee into the same area where the grill was located. This, coupled with Officer Sabillon's observation of Waller holding his waistband while fleeing, would be enough to establish the possession element for Waller's offenses. *See Commonwealth v. Hewlett*, 189 A.3d 1004, 1010 (Pa. Super. 2018) (finding evidence sufficient to establish possession where police saw defendant flee a vehicle clutching his waistband and saw him crouch behind parked vehicles where they later recovered a firearm).

Finally, when the officers canvassed the area where Waller was seen fleeing, the officers found footprints in the fresh snow that led directly to the grill. These footprints were made by a Timberland boot—the same brand of boot as those worn by Waller when he was arrested. Viewing this evidence in the light most favorable to the Commonwealth as verdict winner, the Commonwealth presented more than enough evidence to establish that Waller discarded the firearm that was found inside the grill just after the pursuit.

In Waller's second issue, he contends that his convictions were against the weight of the evidence as to whether he had possession—actual or

constructive—of the handgun.[3]  In his argument, Waller merely rehashes the same points that he raised in his sufficiency argument, highlighting the perceived deficiencies in the Commonwealth's evidence that he possessed the firearm in the grill while being chased.  Again, while the Commonwealth did not apprehend Waller in possession of the firearm, there was ample circumstantial proof that Waller possessed the firearm:  (1) Officer Sabillon saw Waller flee while holding his waistband; (2) the officers saw Waller flee into the same area where the firearm was found in the grill; (3) the officers found footprints in the fresh snow leading directly to the grill in which the firearm was found; and (4) the footprints were made by a Timberland boot that were similar to those worn by Waller when he was arrested.  When

_____

[3] The standard applied to a weight of the evidence claim is as follows:

> The decision to grant or deny a motion for a new trial based upon a claim that the verdict is against the weight of the evidence is within the sound discretion of the trial court.  Thus, "the function of an appellate court on appeal is to review the trial court's exercise of discretion based upon a review of the record, rather than to consider *de novo* the underlying question of the weight of the evidence."  An appellate court may not overturn the trial court's decision unless the trial court "palpably abused its discretion in ruling on the weight claim."  Further, in reviewing a challenge to the weight of the evidence, a verdict will be overturned only if it is "so contrary to the evidence as to shock one's sense of justice."

*Commonwealth v. Williams*, 176 A.3d 298, 312 (Pa. Super. 2017) (quoting *Commonwealth v. Cash*, 137 A.3d 1262, 1270 (Pa. 2016) (internal citations omitted)).

considered together, the trial court did not abuse its discretion in denying Waller's post-trial motion for new trial.

Judgment of sentence affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date:* *6/23/2022*