J-A07012-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| NASEEM BRANDON EDWARDS | : | |
| | : | |
| Appellant | : | No. 975 MDA 2023 |

Appeal from the Judgment of Sentence Entered June 5, 2023
In the Court of Common Pleas of Berks County
Criminal Division at No: CP-06-CR-0004250-2021

BEFORE: STABILE, J., SULLIVAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STABILE, J.:         **FILED JUNE 27, 2024**

Appellant, Naseem Brandon Edwards, appeals from his judgment of sentence of 52-116 months' imprisonment for carrying a firearm without a license (18 Pa.C.S.A. § 6106), flight to avoid apprehension (18 Pa.C.S.A. § 5126) and related offenses. Appellant challenges the sufficiency and weight of the evidence and argues that his sentence is excessive. We affirm.

The trial court summarized the evidence adduced during trial as follows:

> This case involves a traffic stop that started in West Reading which turned into a police chase and motor vehicle accident that ended in Wyomissing that occurred on December 8, 2021. On December 8, 2021, Officer Breitenstein was in a stationary position near Delaney Circle in West Reading Borough, Berks County, Pennsylvania. Officer Breitenstein observed a gray sedan approach the traffic circle and make a right hand turn out of the circle onto Reading Avenue without using a turn signal and also observed the vehicle had a broken taillight and inoperable registration lamp. Officer Bohn was working with Officer

---

[*] Former Justice specially assigned to the Superior Court.

Breitenstein in a separate vehicle at that time and Officer Bohn initiated the traffic stop on the gray sedan.

Officer Bohn testified that he observed a gray Ford Focus with a broken taillight and broken license plate light on Buttonwood Street in West Reading Borough. Officer Bohn initiated a traffic stop on Reading Avenue by turning on the vehicle's overhead lights based on the [Appellant's] vehicle having a broken brake light and broken license plate light. Officer Bohn observed the driver of the vehicle lean to the right and dip down as if he was reaching down.

Officer Bohn approached the vehicle and asked for license, registration and insurance. The driver told the officer that he was recently robbed and didn't have his license with him. He also said the vehicle belonged to his sister. The driver then verbally told the officer that his name was Samir Smith.

When Officer Bohn was returning to his vehicle to run the driver's information, Officer Breitenstein was going to approach the vehicle on the passenger's side. Before doing so, Officer Bohn advised Officer Breitenstein that the vehicle was switched from park to drive and that the driver was also on a facetime call before Officer Breitenstein went to approach the vehicle. When Officer Breitenstein knocked on the window, the driver accelerated.

Officer Bohn immediately pulled out and attempted to stop him a second time. While in pursuit, the driver crashed the vehicle through a plastic barrier and into a guardrail near Reading Avenue and Bern Road in Wyomissing Borough, thereby disabling the vehicle. The male passenger immediately got out of the vehicle and started to run towards Bern Road.

Officer Bryant and Officer Cavallo from the Wyomissing Borough Police Department responded to Officer Bohn's call. Officers Cavallo and Bryant were in full police uniform. They were coming down Fairview when Officer Cavallo observed a male running on Bern Road near Penn Avenue matching the description of the driver. Officer Bryant then turned on the lights and sirens. The suspect was observed running up the sidewalk on George Street. Officer Cavallo jumped out of the vehicle and chased the suspect. Officer Cavallo was in lethal cover and had his gun drawn. The suspect did eventually stop but was failing to comply with Officer Cavallo's orders. Officer Cavallo had the suspect get onto the

ground until Officer Bryant could catch up and assist with handcuffing. Officer Bryant proceeded to handcuff [Appellant]. [Appellant] was refusing to comply with walking back to the vehicle, as a result, Officer Bryant dragged [Appellant] about two feet. The officers asked who [Appellant] was, and [Appellant] replied saying "you guys will find out when you run my name." While taking [Appellant] into custody, [Appellant] blurted out that the police were lucky his plan didn't follow through and that he would have "popped off" at police and shot the chasing officers and their K9.

Officer Bohn patted down [Appellant] where he found a clear plastic bag with a leafy green substance in it. [Appellant] was then placed in the back of the patrol vehicle for transport. Officer Bohn advised [Appellant] of his Miranda rights when he placed him in the back of the vehicle. Officer Bohn transported [Appellant] to Reading Hospital. While there, Officer Bohn's radio went off with an update about the car and finding a Glock and extender magazine in the vehicle. [Appellant], unprompted, responded by stating, "you searched my vehicle?"

Officer Breitenstein stayed at the scene with the vehicle. When the vehicle was impounded, he made sure the vehicle was secured there. Officer Breitenstein then proceeded to the Reading Hospital to assist Officer Bohn with [Appellant]. Shortly after Officer Breitenstein arrived at the hospital, [Appellant] after seeing him said, "oh, you're the K-9 officer. I was going to shoot you and your K-9."

Trial Court Opinion, 9/21/23, at 2-5 (citations omitted).

The evidence further established that the police recovered a Glock from Appellant's vehicle that was operable and capable of firing the ammunition that was loaded in the extended magazine. The parties also stipulated that the Glock had been stolen from another individual's home in Vermont in 2021. The Commonwealth presented a certification that Appellant did not have a license to carry a concealed handgun. Finally, the parties stipulated that on the date of his arrest, and prior to his encounter with the police, Appellant was

charged and wanted for a pending felony charge in Pennsylvania. *See* Trial Transcript ("T.T.") at 391-98.

On June 5, 2023, following a jury trial, the court imposed sentence. Appellant filed timely post-sentence motions challenging the weight of the evidence, which the court denied, and a timely appeal to this Court. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

In this appeal, Appellant raises the following issues:

1. Whether the Commonwealth presented sufficient evidence to establish beyond a reasonable doubt the elements for Firearms Not to be Carried Without a License and Flight to Avoid Apprehension, Trial, and/or Punishment.

2. Whether the verdict against the Appellant for Firearms Not to be Carried Without a License and Flight to Avoid Apprehension, Trial, and/or Punishment was against the weight of the evidence.

3. Whether the trial court abused its discretion in imposing an excessive sentence on Appellant.

Appellant's Brief at 19.

Appellant first argues that the evidence was insufficient to sustain his convictions for carrying firearms without a license and flight to avoid apprehension. The standard we apply in reviewing the sufficiency of the evidence is

> whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be

- 4 -

resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.... Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Brockman*, 167 A.3d 29, 38 (Pa. Super. 2017).

The jury found Appellant guilty of flight to avoid apprehension under 18 Pa.C.S.A. § 5126(a), which provides:

A person who willfully conceals himself or moves or travels within or outside this Commonwealth with the intent to avoid apprehension, trial or punishment commits a felony of the third degree when the crime which he has been charged with or has been convicted of is a felony and commits a misdemeanor of the second degree when the crime which he has been charged with or has been convicted of is a misdemeanor.

The essence of this crime is the defendant refused to submit to a lawful detention or prosecution. *Commonwealth v. Colon*, 719 A.2d 1099, 1100 n.2 (Pa. Super. 1998). While this statute requires proof that the defendant intended to avoid apprehension, it does not require the defendant to have knowledge of the grading of the offense for which he is avoiding capture. *Commonwealth v. Steffy*, 36 A.3d 1109, 1111-12 (Pa. Super. 2012). "Furthermore, nothing in the statutory language requires that police have knowledge of the underlying charge or conviction. It is sufficient for the defendant to intentionally elude law enforcement to avoid apprehension, trial or punishment on a charge or conviction." *Id.* at 1112. The grading of this offense is determined by the grading of the underlying offense for which the

- 5 -

defendant is charged at the time of flight, regardless of the ultimate disposition of those charges. *Commonwealth v. Stoppard*, 103 A.3d 120, 123-24 (Pa. Super. 2014).

Here, West Reading Police Officer Bohn observed a vehicle pass by him with an inoperable taillight and license plate light. The officer followed the vehicle and activated his emergency lights when it failed to use a turn signal while exiting a traffic circle. The car stopped in the next block, and as the officer exited his patrol vehicle, he observed the driver, Appellant, lean to the right and down, as if reaching down to the floorboard. Appellant, the lone occupant of the vehicle, identified himself as "Samir Smith" and claimed he did not have his license because he had been robbed recently. The officer told Appellant that he was under investigation and returned to his patrol car to run the information. A second officer, Officer Breitenstein, arrived with his K-9 partner. Appellant then drove away, ignoring Officer Breitenstein's knock on his window and commands. Officer Bohn's patrol car chased Appellant's vehicle for several blocks into a neighboring borough, where Appellant's vehicle crashed through a construction barrier and into a fence. Appellant exited the vehicle and ran away on foot, wearing only socks and leaving his boots behind. Officer Bohn continued his pursuit on foot. Officer Breitenstein also pursued in his own patrol vehicle, but when he arrived at the crashed vehicle, Appellant and Officer Bohn were already gone. Wyomissing police officers soon located Appellant, and after a short pursuit on foot, they placed him under arrest. When he was handcuffed, he stated that the officers were

lucky that his plan did not work, because he would have shot the pursuing officers and the K-9 unit. Appellant stated, "I told myself that if I ever got caught, I was going to shoot it out." T.T. at 173. When the officers asked Appellant who he was, he replied, "You guys will find out when you run my name." *Id.* The police took Appellant to the hospital because he passed out and vomited after his arrest. The police discovered Appellant's correct identity following his release from the hospital. The parties stipulated that Appellant was wanted for another felony offense at the time he fled from the police in the present case.

In short, viewed in the light most favorable to the Commonwealth, this evidence demonstrates that during a routine traffic stop, Appellant attempted to avoid an arrest on other criminal charges by providing a false identity to the investigating officer, fleeing in his car, and then fleeing on foot after crashing the car. Following his arrest, he refused to identify himself and acknowledged the other charges by stating that he had previously decided to "shoot it out" if he "ever got caught." The court properly determined that this evidence was sufficient to sustain Appellant's conviction for flight from apprehension.

The jury also found Appellant guilty of carrying firearms without a license under 18 Pa.C.S.A. § 6106(a)(1), which provides that, except in circumstances not relevant here, "any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and

lawfully issued license under this chapter commits a felony of the third degree." ***Id.*** To prove this offense, the Commonwealth must establish that the weapon was a firearm; that the firearm was unlicensed; and that where the firearm was concealed on or about the person, it was outside his home or place of business. ***Commonwealth v. Hewlett***, 189 A.3d 1004, 1009 (Pa. Super. 2018).

The Commonwealth can establish illegal possession of a firearm with proof of constructive possession. ***Commonwealth v. Parker***, 847 A.2d 745, 750 (Pa. Super. 2004). Constructive possession

> is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as "conscious dominion." … We subsequently defined "conscious dominion" as "the power to control the contraband and the intent to exercise that control." … To aid application, we have held that constructive possession may be established by the totality of the circumstances.

***Id.***

Here, during the traffic stop, Officer Bohn observed Appellant lean to the right and dip down, indicating that Appellant was attempting to conceal an object of some kind. Following Appellant's flight from apprehension and arrest, the police found a Glock pistol with a loaded extended magazine in a vehicle in which Appellant was the sole occupant. When the police informed Appellant that the gun was reported stolen, he replied, "you searched my vehicle?" T.T. at 208. Appellant also expressed his intent to shoot the

pursuing police officers. Appellant had extensive knowledge of Glock handguns, and when Officer Breitenstein mentioned the extended magazine he located with the gun, Appellant replied, "Isn't it nice." T.T. at 126-27.

The parties stipulated at trial that Appellant did not have a license to carry the Glock concealed. Viewed in the light most favorable to the Commonwealth, this evidence demonstrates that (1) the police found a Glock handgun in the vehicle that Appellant drove during his flight from apprehension, (2) the handgun had a loaded extended magazine, (3) Appellant was in constructive possession of the Glock handgun; and (4) he possessed the handgun without a license. This evidence was sufficient to sustain Appellant's conviction for carrying a firearm without a license.

Next, Appellant contends that the weight of the evidence does not support his conviction for carrying a firearm without a license or flight to avoid apprehension. The trial court properly rejected this argument.

A motion seeking a new trial based on the weight of the evidence is

addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

It has often been stated that a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Clay*, 64 A.3d 1049, 1054–55 (Pa. 2013).

Here, the trial court reasoned:

[T]he jury heard the testimony and evidence presented during trial and, as the finder of fact, was able to resolve any conflicts and make determinations of credibility as to the weight afforded such testimony. The Appellant specifically argued that the verdict was based on speculation and conflicting testimony for firearms not to be carried without a license. Any conflict in testimony was able to be resolved by the fact finder. This court, [which] likewise viewed the testimony and evidence presented during trial, did not find that the verdict of the jury shocked our sense of justice. Appellant's arguments are unavailing, and his appeal should be dismissed regarding this argument.

Next, Appellant argues that the evidence did not show that Appellant had notice or was aware of pending charges in another jurisdiction. Appellant argues further that the jury's verdict was premised on speculation, conjecture and conflicting testimony. However, the statute does not require that Appellant knew of pending charges. *See Steffy*, 36 A.3d at 1111. Thus, Appellant's arguments are unavailing[.]

Trial Court Opinion, 9/21/23, at 12-13. We agree with this analysis.

- 10 -

The Commonwealth presented compelling evidence that Appellant fled from the scene of a traffic stop, first by vehicle and then on foot, to avoid apprehension for a pending felony charge. The Commonwealth also demonstrated that (1) the police found a Glock firearm in the vehicle Appellant had been driving, (2) he was the lone occupant of the vehicle, (3) he did not have a valid license for the firearm, and (4) the firearm had been stolen from a Vermont residence in 2021. Although Appellant cites his self-serving, uncorroborated testimony that he did not know the gun was in the vehicle and that he was unaware of the outstanding felony charges against him, the jury was free to reject this testimony and to find the Commonwealth's evidence credible. Thus, the court acted within its discretion by rejecting Appellant's challenge to the weight of the evidence.

Finally, Appellant contends that the trial court abused its discretion by imposing an excessive sentence. The Commonwealth argues that Appellant waived this argument, and we agree.

Challenges to the alleged excessiveness of a sentence implicate the discretionary aspects of the sentence. *Commonwealth v. Shreffler*, 249 A.3d 575, 583 (Pa. Super. 2021). "A challenge to the discretionary aspects of sentencing does not entitle [Appellant] to review as of right." *Commonwealth v. Bynum-Hamilton*, 135 A.3d 179, 184 (Pa. Super. 2016). To establish this Court's jurisdiction to address such a challenge, Appellant must satisfy a four-part test: (1) he preserved the issue by raising

it at sentencing or in a post-sentence motion, (2) he filed a timely notice of appeal, (3) he set forth a concise statement of reasons relied upon for allowance of appeal, and (4) he raised a substantial question for this Court's review. *Id.* With regard to the third prong of this test, Pa. R.A.P. 2119(f) provides:

> An appellant who challenges the discretionary aspects of a sentence in a criminal matter shall set forth in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence. **The statement shall immediately precede the argument on the merits with respect to the discretionary aspects of sentence.**

Pa.R.A.P. 2119(f) (emphasis added).

Although "failure to include the Rule 2119(f) statement does not automatically waive an appellant's argument . . . we are precluded from reaching the merits of the claim when the Commonwealth lodges an objection to the omission of the statement." *Commonwealth v. Roser*, 914 A.2d 447, 457 (Pa. Super. 2006); *see also Commonwealth v. Farmer*, 758 A.2d 173, 182 (Pa. Super. 2000) (defendant waived objection to discretionary aspects of sentencing where he failed to include Rule 2119(f) statement and Commonwealth objected to omission).

Here, Appellant failed to include a Rule 2119(f) statement in his brief, and the Commonwealth objected to this omission in its brief. Commonwealth's Brief at 19-20. In accordance with *Roser* and *Farmer*, we conclude that Appellant has waived this argument.

For these reasons, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.


Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 06/27/2024