J-S07003-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JEROME KASEY | : | |
| | : | |
| Appellant | : | No. 907 MDA 2023 |

Appeal from the Judgment of Sentence Entered May 31, 2023
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0002108-2022

BEFORE: LAZARUS, P.J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY LAZARUS, P.J.:          **FILED AUGUST 15, 2024**

Jerome Kasey appeals from the judgment of sentence,[1] entered in the Court of Common Pleas of Dauphin County, following his convictions of one count each of first-degree murder,[2] person not to possess firearms,[3] and

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] On June 26, 2023, Kasey filed a counseled notice of appeal stating the appeal was "from the conviction of May 25, 2023, and judg[]ment of sentence[] entered on May 31, 2023, by the Honorable Scott Arthur Evans." Notice of Appeal, 6/26/23. We note that this appeal properly lies only from Kasey's judgment of sentence. **See Commonwealth v. O'Neill**, 578 A.2d 1334, 1335 (Pa. Super. 1990) ("[I]n criminal cases[,] appeals lie from judgment of sentence rather than from the verdict of guilt[.]"). We have amended the caption accordingly.

[2] 18 Pa.C.S.A. § 2502(a).

[3] **Id.** at § 6105(a)(1).

firearms carried without a license.[4]  Additionally, Kasey's counsel, Kristen L.

Weisenberger, Esquire, has filed an application to withdraw as counsel, and

an accompanying *Anders*[5] brief.  Upon review, we grant Attorney

Weisenberger's application to withdraw, and we affirm Kasey's judgment of

sentence on the basis of the thorough and well-written decision authored by

the Honorable Scott Arthur Evans.

The trial court set forth the facts of this case as follows:

On November 16, 2021, James Williams was living in Harrisburg and making his living as a drug dealer.  He had met [Kasey] two [] to three [] months earlier when they lived in the same building and became friends.  . . .  Several weeks before November 16th, [2021,] Williams moved [out of his apartment and] into the apartment [Kasey] shared with his wife, Rhaquan Brown, at 253 Hummel Street, Apartment 2, in the City of Harrisburg.

At some point on November 16th[, 2021, Kasey, while in Baltimore,] . . . told Williams they needed to pick up his cousin, Jeramiah Beamon, to bring him back to Harrisburg.  Beamon carried a black case[,] which Williams later learned contained a gun.

\*    \*    \*

At some point [back in Harrisburg], Williams saw [Kasey] place the gun Beamon had brought from Baltimore in[] his bedroom closet.

[Kasey] seemed concerned with Beamon's behavior and told Williams he wanted to bring him back to Baltimore.  Specifically, [Kasey] said he did not trust Beamon because he was unlocking

---

[4] *Id.* at § 6106(a)(1).

[5] *Anders v. California*, 368 U.S. 738 (1967); *Commonwealth v. McClendon*, 434 A.2d 1185 (Pa. 1981); *Commonwealth v. Santiago*, 978 A.2d 349 (Pa. 2009).

the doors and windows of his apartment and asking for the address. During the evening, Beamon also expressed his need to make some money.

By approximately 10:30 p.m., Williams, [Kasey], and Beamon[] were outside near the corner of Kittatinny [] and Hummel Streets[,] in the Allison Hill section of Harrisburg[,] attempting to sell drugs, although it was mostly Williams doing the selling.

Williams was extremely familiar with the neighborhood, including the locations of most of the cameras in the area. In fact, video footage later obtained by the police and displayed for the jury showed Williams ducking behind a truck to make a drug transaction out of the view of any cameras.

The three [] men walked down Hummel Street[,] where Williams looked for more possible sales. They turned onto Swatara Street, and then Williams described for the jury what transpired:

> We was walking down the street, was—we turned on Swatara and Hummel, got to I want to say in the middle of the block of Swatara [], between Swatara and Hummel and Swatara and Evergreen[,] and I heard—[Kasey] moved me from the middle to the left, and when I heard the first shot, I took off running. But I can't sit here and say that I [saw] [Kasey] shoot him.

[N.T. Jury Trial, 5/22/24-5/24/24, at 420].

Although Williams could not see [Kasey] fire the gun, he saw the gun out of the corner of his eye, and he saw Beamon drop to the ground. [Kasey] also ran from the scene, following behind Williams, and both men returned to [Kasey]'s apartment. There had been no arguments or advance[] warning that [Kasey] intended to shoot Beamon. Therefore, Williams was surprised and asked [Kasey] why he didn't inform him of his plans. [Kasey] replied that he had told him. Williams told [Kasey] it was a dumb place to shoot someone because of all the cameras in the area.

Beamon suffered at least three [] gunshot wounds to his head, one [] to his left arm, and one [] to his back. The shots to his arm and back occurred first, but the shots to his head happened before he died and were [] fatal. The autopsy uncovered no signs of a physical altercation, seeming to confirm various witnesses who testified they did not hear any argument or indications of a physical struggle prior to the gunshots.

Needing more marijuana, and because [Kasey] needed to "clear his head," the men decided to again return to Baltimore. They changed clothes, placed the clothes they had been wearing in a garbage bag, and discarded the bag along Route 83 on the way to Baltimore. While in Baltimore, [Kasey] took the gun into a house with which Williams was not familiar. When he returned from the house, [Kasey] no longer had the gun. [Kasey] also directed them to a house where he could get money for him and Williams to leave Pennsylvania.

Williams suggested that he and [Kasey] go their separate ways, but [Kasey] refused. [Kasey] wanted Williams to flee with him, and Williams believed he had no choice because [Kasey] was firm in his position and had just killed his own cousin.

Without the gun, and presumably with money to finance their escape, the men returned to Harrisburg in the early morning of November 17th. Later [] th[at] afternoon, [Kasey] and Williams picked Brown up from work, but Williams insisted on being dropped off at a bar rather than returning to [Kasey]'s apartment due to the likelihood of police activity in the area of the murder. [Brown proceeded to the apartment while Williams and Kasey went to a bar.]

While at the bar, Williams overheard [Kasey]'s side of a telephone conversation with Brown in which she apparently advised [Kasey] that the police were in their apartment searching at that moment. Detective Jason Brinker testified that Brown initiated a telephone call in his presence during the search of the apartment. [Brown] told him she was calling her father and [Detective Brinker] heard [Brown] explaining that the police were searching the apartment, she did not know why, and that she was scared. Since the police had explained the reason for their interest to Brown, and obtained her written consent to search the apartment, [Detective] Brinker offered to speak to her father to explain. Brown put the phone on speaker, handed it to [Detective] Brinker[,] and he explained the purpose of the police's presence. However, the police never checked the phone number Brown called or otherwise verified who she had called. [Detective] Brinker simply took [Brown] at her word [as to] who[m] she was [spea]king [with] and who he ended up talking to.

After that phone call, [Kasey] decided that he and Williams needed to leave town. Accompanied by Brown, they were driven to Brown's mother's house near the Maryland/Delaware border by

Brown's sister. Several days later, Brown's mother and stepfather drove them to Lubbock, Texas, where they stayed with one of Brown's relatives. [Kasey] and Williams obtained jobs and planned to remain in Texas indefinitely. They were both arrested in Texas approximately two [to three] months later. Williams' description of his and [Kasey]'s whereabouts and the timeline of events was substantially corroborated by an investigation of the locations of [Williams'] cell phone at relevant times. Based in part on this corroboration of Williams' credibility, and observations of the videos of the incident, the police eliminated Williams as a suspect in the shooting.

\* \* \*

Eight [] shell casings were discovered at the scene of the homicide. All the casings were for a 9-millimeter semi-automatic handgun, and all were manufactured by Federal Ammunition. The consent search of [Kasey]'s apartment revealed a box of 9-millimeter Federal [A]mmunition [bullets] and a 9-millimeter magazine in a closet. Brown claimed that the ammunition and magazine were left by the previous tenants.

Brown was present during the search of the apartment. Officers noticed that she was intently focused on a jacket sitting on top of a plastic tote. Before being asked to move to another location in the apartment, her body was shielding the jacket from the police's view. The jacket was identified as the same one [Kasey] was seen wearing in photographs reviewed on [social media accounts], but without the fur collar observed in those photographs. The attachable fur collar was found in the bedroom closet. The jacket was collected as evidence and later tested positive for the presence of gunshot residue.

\* \* \*

A camera operated by Dauphin County, located at Hummel and Kittatinny Streets, captured three [] individuals walking towards the location of the shooting. One of those individuals was wearing clothes matching those worn by Beamon when he was discovered dead. Several moments later, two [] of those individuals could be viewed leaving the scene of the crime. Additional surveillance video footage was admitted for the jury to view depicting the actual shooting, including a zoomed[-]in video depicting the shooter and muzzle fire coming from the firearm. While the jury was able to view the videos and make their own determinations,

- 5 -

Williams identified [Kasey] as the person firing the gun at Beamon.

Finally, [the parties] stipulate[ed] that [Kasey] was previously convicted of a felony drug offense and [a]ggravated [a]ssault.[8] [Kasey] was also not licensed to carry a concealed firearm.

> [8] The trial was bi[]furcated to avoid prejudice to [Kasey] from the introduction of this evidence. Accordingly, the evidence of [Kasey]'s prior convictions was not presented to the jury until after [it] returned verdicts on the counts of [first-d]egree [m]urder and [f]irearms not to be [c]arried [w]ithout a [l]icense, and answered in the affirmative that the[ jury] believed beyond a reasonable doubt that [Kasey] possessed a firearm.

Trial Court Opinion, 10/16/23, at 2-8 (citations, quotation marks, brackets, and some footnotes omitted).

On May 25, 2023, following trial, a jury rendered a guilty verdict on the above-mentioned offenses. On May 31, 2023, the court sentenced Kasey to an aggregate term of incarceration for life. That same day, Kasey filed a counseled post-sentence motion challenging the weight of the evidence, which the court granted, in part, and denied, in part, on June 1, 2023.[6]

Kasey filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Attorney Weisenberger subsequently filed with this Court an application to withdraw as counsel and a brief pursuant to **Anders** and its progeny. Kasey did not file a

---

[6] The court granted defense counsel Gerard Mangieri, Esquire, permission to withdraw, and appointed Attorney Weisenberger in his stead, and denied the request for a new trial and the request for additional time to file an additional post-sentence motion. **See** Order, 6/1/23.

*pro se* brief or otherwise respond, and did not retain alternate counsel for this appeal.

Before addressing Kasey's issues on appeal, we must determine whether Attorney Weisenberger has complied with the dictates of **Anders** in petitioning to withdraw from representation. **See Commonwealth v. Daniels**, 999 A.2d 590, 593 (Pa. Super. 2010) ("When presented with an **Anders** brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw."). To procedurally withdraw, counsel must:

> (1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; (2) furnish a copy of the [**Anders**] brief to the [appellant]; and (3) advise the [appellant] that [the appellant] has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

**Commonwealth v. Cartrette**, 83 A.3d 1030, 1032 (Pa. Super. 2013) (en banc).

With respect to the third prong, this Court has held that counsel must "attach to [the] petition to withdraw a copy of the letter sent to [the] client advising [the client] of their rights." **Commonwealth v. Millisock**, 873 A.2d 748, 752 (Pa. Super. 2005). In addition, an **Anders** brief must comply with the following requirements:

> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous [and] articulate the relevant facts of record, controlling case law, and/or

statutes on point that have led to the conclusion that the appeal is frivolous.

***Commonwealth v. Santiago***, 978 A.2d 349, 361 (Pa. 2009). After determining that counsel has satisfied the technical requirements of ***Anders*** and ***Santiago***, this Court must then "conduct a simple review of the record to ascertain if there appear[,] on its face[,] to be arguably meritorious issues that counsel, intentionally or not, missed or misstated." ***Commonwealth v. Dempster***, 187 A.3d 266, 272 (Pa. Super. 2018) (en banc).

Instantly, our review of Attorney Weisenberger's ***Anders*** brief and application to withdraw reveals that counsel has complied with each of the technical requirements of ***Anders*** and ***Santiago***. The record further reflects that Attorney Weisenberger has furnished a copy of the ***Anders*** brief to Kasey and advised him of his right to retain new counsel or raise himself any additional points that he deems worthy of this Court's attention. Accordingly, since Attorney Weisenberger has complied with all requirements for withdrawing from representation, we will examine the record and make an independent determination of whether Kasey's appeal is, in fact, wholly frivolous.

On appeal, Kasey raises two issues for our review:

[1.] Whether the trial court erred in accepting the jury's verdict where the Commonwealth failed to present sufficient evidence [Kasey] shot [Beamon].

[2.] Whether the trial court erred in accepting the jury's verdict which went against the weight of the evidence [that] established [Williams] shot [Beamon].

***Anders*** Brief, at 4. Kasey is entitled to no relief.

- 8 -

> When reviewing a sufficiency of the evidence claim, this Court must review the evidence and all reasonable inferences in the light most favorable to the Commonwealth as the verdict winner, and we must determine if the evidence, thus viewed, is sufficient to enable the fact-finder to find every element of the offense beyond a reasonable doubt. The fact-finder is free to believe all, part, or none of the evidence presented. This Court may not substitute its judgment for that of the fact-finder, and if the record contains support for the verdict, we may not disturb the verdict.

*Commonwealth v. Goins*, 867 A.2d 526, 527-28 (Pa. Super. 2004) (citations omitted).

"The elements of first[-]degree murder exist where the Commonwealth shows that the defendant acted with the specific intent to kill, that a human being was unlawfully killed, that the person accused did the killing, and that the killing was done with premeditation or deliberation." *Commonwealth v. Champney*, 832 A.2d 403, 408 (Pa. 2003) (citation and quotation marks omitted).

To "convict a defendant for possession of a firearm by a prohibited person, the Commonwealth must prove the defendant was previously convicted of a specific offense enumerated in [18 Pa.C.S.A. §] 6105." *Commonwealth v. Hewlett*, 189 A.3d 1004, 1009 (Pa. Super. 2018).

"In order to convict a defendant for carrying a firearm without a license, the Commonwealth must prove: that the weapon was a firearm; that the firearm was unlicensed; and that[,] where the firearm was concealed on or about the person, it was outside his home or place of business." *Id.*

When examining a challenge to the weight of the evidence, our standard of review is as follows:

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the . . . verdict if it is so contrary to the evidence as to shock one's sense of justice.
>
> **Commonwealth v. Small**, [] 741 A.2d 666, 672-73 (Pa. 1999). Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

**Champney**, 832 A.2d at 408 (some citations omitted). A "trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings." **Commonwealth v. Rivera**, 983 A.2d 1211, 1225 (Pa. 2009).

With respect to both challenges, after a thorough review of the record, counsel's **Anders** brief, the applicable law, and Judge Evans' well-reasoned opinion, we conclude Kasey's claims merit no relief. The trial court's opinion properly addresses and disposes of Kasey's issues on appeal. **See** Trial Court Opinion, 10/16/23, at 8-11. Finally, our independent review of the record reveals no meritorious issues that counsel missed or misstated. **See Dempster**, **supra**. Therefore, we rely on Judge Evans' opinion to affirm Kasey's judgment of sentence. We direct the parties to attach a copy of that opinion in the event of further proceedings.

Judgment of sentence affirmed. Application to withdraw granted.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 08/15/2024